Caryl M. SHERMAN, Plaintiff,

v.

AMERICAN CYANAMID COMPANY, Defendant.

No. 1:97–CV–0185.

United States District Court, N.D. Ohio, Eastern Division.

Feb. 26, 1998.

Robert S. Bauders, Cleveland, OH, for plaintiff.

Sue Marie Douglas, Steven C. Sutton, Michele H. Schmidt, Millisor & Nobil, Cleveland, OH, for defendant.

Jerome F. Weiss, Cleveland, OH.

Edward A. Icove, Lustig, Icove & Lustig, Cleveland, OH.

## MEMORANDUM OPINION AND ORDER

GWIN, District Judge.

On December 1, 1997, defendant American Cyanamid Company filed a motion for summary judgment [Doc. 42]. In its motion, defendant American Cyanamid says no material evidence supports plaintiff Caryl Sherman's claim for age or sex discrimination under federal and state law. Plaintiff Caryl Sherman filed her response on December 23, 1997 [Doc. 66]. Upon review of the record as

a whole, the Court grants defendant's motion for judgment for the reasons that follow.

## I

Plaintiff Caryl Sherman sues her former employer, defendant American Cyanamid. Defendant American Cyanamid · employed Sherman from January 22, 1979, until August 31, 1994. Sherman alleges that in August 1994, defendant American Cyanamid unlawfully fired her because of her age (50) and sex (female) violating the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and Ohio Revised Code Chapter 4112. In addition, plaintiff Sherman claims that in February 1992, defendant American Cyanamid unlawfully demoted her and unlawfully failed to return her to a hospital sales representative role in June 1993.

## II

Defendant American Cyanamid manufactured and sold chemicals, pharmaceutical drugs and other industrial products throughout the United States.[1] American Cyanamid sold pharmaceuticals nationwide through its Lederle and Advantus Divisions.

In 1979, American Cyanamid hired plaintiff as a chemical sales representative. As a sales representative, plaintiff called on physicians and made sales presentations. In June 1988, the plaintiff requested and received a transfer to the Lederle Division as a pharmaceutical sales representative in the Cleveland District.

In August 1990, American Cyanamid chose the plaintiff to fill an open hospital sales representative position for the Cleveland area. In this position, she made sales presentations to physicians and hospital representatives in her assigned territory. Defendant American Cyanamid says performance with these new responsibilities was no more than average. She failed to meet her sales objectives for a priority product. Her managers claimed she needed to improve her sales closing skills.

In January 1992, the American Cyanamid Company reorganized its sales force. Under its new alignment, the defendant demoted Sherman and assigned her as a pharmaceutical sales representative of Lederle. The defendant retained two longer serving representatives as hospital representatives.

American Cyanamid claims plaintiff then had problems in her new position. Defendant points to a low 1992 overall ranking as reflecting this. In this ranking, American Cyanamid ranked plaintiff 70th of 78 sales representatives in the Great Lakes Region. The defendant claims this poor ranking continued into 1993.[2]

In 1993, the defendant realigned its sales force. The defendant gave the plaintiff additional sales territory. With this new territory, the plaintiff did not achieve budget in many areas. Upon evaluation, American Cyanamid placed plaintiff on a performance improvement plan. The plan showed that plaintiff ranked near the bottom of the sales force in many categories. The plan criticized Sherman's ability to close sales, not her product knowledge. Defendant American Cyanamid continued to criticize Sherman's performance in later evaluations.

In August 1994, defendant American Cyanamid again restructured its sales force. The change eliminated some existing territories and reduced employees. In making these decisions, the defendant most used "Gold Cup" standings. The "Gold Cup" was a national sales program. Regional sales manager Thomas Flippen ranked plaintiff low and recommended plaintiff be separated. Corporate leaders accepted the recommendation and separated plaintiff's employment.

On August 16, 1994, defendant told plaintiff they were eliminating her. Including the plaintiff, the defendant fired four other sales representatives from the Great Lakes Region as part of this realignment. Of these five employees, the plaintiff was the only employee over age 40. Three of the five separated were male.

---

**1.** In 1995, American Home Products Company purchased defendant American Cyanamid.

**2.** In a "Gold Cup" national sales competition, plaintiff rated only 23rd of 31 in her Region.

## III

The procedure for granting summary judgment is found in Fed.R.Civ.P. 56(c), which provides in part that:

[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment is not proper if there is a material dispute over the facts, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The Sixth Circuit has recognized that *Liberty Lobby, Celotex* and *Matsushita* effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir.1989). In responding to a proper motion for summary judgment, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Street*, 886 F.2d at 1479 *quoting Liberty Lobby*, 477 U.S. at 257. The nonmoving party must introduce more than a scintilla of evidence to overcome the summary judgment motion. *Street*, 886 F.2d at 1479. It is also not sufficient for the nonmoving party merely to "show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street*, 886 F.2d at 1479. That is, the nonmoving party has an affirmative duty to direct the court's attention to specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

This line of cases emphasizes the point that when one party moves for summary judgment, the nonmoving party must take affirmative steps to rebut the application of summary judgment. Courts have stated that:

Under *Liberty Lobby* and *Celotex*, a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict, and if the opposing party is therefore unable to demonstrate that he can do so, summary judgment is appropriate. "In other words, the movant could challenge the opposing party to 'put up or shut up,' on a critical issue [and] ... if the respondent did not 'put up,' summary judgment was proper."

*Fulson v. City of Columbus*, 801 F.Supp. 1, 4 (S.D.Ohio 1992) (quoting *Street*, 886 F.2d at 1478).

The Sixth Circuit Court of Appeals further emphasized the showing required to defeat summary judgment, in *Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir.1992). There, the Court stated:

"The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of evidence that the plaintiff is entitled to a verdict...." The "mere possibility" of a factual dispute is not enough. Rather, in order to defeat summary judgment a plaintiff "must come forward with more persuasive evidence to support [his or her] claim than would otherwise be necessary." Where the defendant demonstrates that after a reasonable period of discovery the

plaintiff is unable to produce sufficient evidence beyond the bare allegations of the complaint to support an essential element of his or her case, summary judgment should be granted.

*Id.* at 581–82 (citations omitted).

## IV

■ Defendant American Cyanamid seeks judgment as to Count II of plaintiff's complaint on the ground that plaintiff Sherman failed to timely bring her claim.[3] In Count II of plaintiff's complaint, plaintiff Sherman makes claim of age discrimination under Ohio law and Federal law. Defendant American Cyanamid says a 180–day statute of limitations period stops the claim under Ohio law.

Plaintiff Sherman complains that American Cyanamid discriminated against her because of age when it fired her on August 16, 1994, and when it demoted her in February 1992.[4] Plaintiff Sherman brought this action on January 24, 1997.

At the time the plaintiff brought this action, an age discrimination claim based on state law was required to be filed within the 180–day limitations period. *Dunn v. Medina General Hosp.,* 917 F.Supp. 1185, 1191 (N.D.Ohio.1996) (discussing Ohio Revised Code § 4112.99 and *Bellian v. Bicron Corp.,* 69 Ohio St.3d 517, 634 N.E.2d 608 (1994)).

Because plaintiff filed her complaint almost two and one half years after the discriminatory act, her state law age discrimination claims in count II of the complaint are time barred. Accordingly, the Court gives defendant American Cyanamid judgment as to plaintiff Sherman's age discrimination claims under Ohio Rev.Code § 4112.09, because they are barred by Ohio Rev.Code. § 4112.99.

## V

■ Defendant American Cyanamid also seeks judgment finding that plaintiff's claims for age and sex discrimination relating to a 1992 job reassignment are precluded by her failure to first file a charge relating to this claim with the EEOC before bringing this action.[5]

On July 10, 1994, plaintiff Sherman filed a charge with the Ohio Civil Rights Commission. In that charge, Sherman alleged that American Cyanamid had discriminated against her. She states:

"I worked for Respondent between 1979 and August 16, 1994, when I was laid off.

"I believe I was laid off because of my age, 50, in violation of the Age Discrimination in Employment Act (ADEA) and because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended."

In this charge, plaintiff Sherman made no complaint concerning any action by defendant American Cyanamid in the 1992 job reassignment.

In order for federal courts to have subject matter jurisdiction of Title VII claims, the claimant must first unsuccessfully pursue administrative relief. *Love v. Pullman Co.,* 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972). Courts have thus held that if the claimant did not first present a claim to EEOC that they may not later pursue a claim in court. The judicial complaint must be limited "to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Ang v. Procter & Gamble Co.,* 932 F.2d 540 (6th Cir.1991) (wherein an employment discrimination plaintiff was precluded from alleging race discrimination where administrative complaint had alleged

---

**3.** American Cyanamid incorrectly moved this Court for judgment as to "state law age discrimination claims in *Count III of the Complaint.*" Defendant's memorandum [Doc 42] at 9. In fact, Count III of Sherman's complaint only makes a claim for "sex discrimination" in violation of O.R.C. § 4112.02(A). Sherman makes claim for age discrimination in Count II of her complaint. Although Count II states a claim specifically arising under 29 U.S.C. § 623(a)(1) ("ADEA"), the Court takes plaintiff's reference to supplement jurisdiction in paragraph one of the complaint as

plaintiff's intent to raise a state "age discrimination" claim.

**4.** Sherman complains that this discrimination included the failure to return her to a hospital representative position during a July 1993 restructuring.

**5.** Plaintiff Sherman makes complaint over both her February 1992 reassignment and the July 1993 failure to place her back into a hospital representative role.

only national origin discrimination) (quoting *EEOC v. Bailey Co., Inc.,* 563 F.2d 439, 446 (6th Cir.1977)).

Plaintiff Sherman's claims regarding the February 1992 demotion and the 1993 failure to return her to her former position are not within the scope of her July 1994 charge to the Ohio Civil Rights Commission. As related, that charge deals only with plaintiff Sherman's August 16, 1994, lay off. Additionally, that charge says the discrimination took place on August 16, 1994. Because, Sherman made no claim to the Ohio Civil Rights Commission regarding the 1992 demotion, this Court is without jurisdiction to entertain this claim. Accordingly, the Court gives defendant American Cyanamid judgment as to all claims concerning plaintiff's 1992 demotion.

## VI

Defendant American Cyanamid next seeks judgment as to Sherman's Title VII, ADEA, and Ohio law claims. The defendant says no direct evidence supports plaintiff Sherman's claims. The defendant says the plaintiff cannot make a *prima facie* showing of discrimination under the circumstantial evidence standard of *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Even if the plaintiff could make such a showing, the defendant says it forwards a legitimate, nondiscriminatory reason for Sherman's separation and she cannot show that defendant's reason was a pretext for discrimination.

Plaintiff Sherman says the defendant American Cyanamid discriminated against her, violating Ohio Revised Code § 4112.02 and Title VII of the Civil Rights Act of 1964. Under 42 U.S.C. § 2000e–2(a)(1), it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to ... compensation, terms, conditions, or privileges of employment, because of such individual's ... sex...." Likewise, Ohio law also specifically forbids employment discrimination "because of sex." Pursuant to Ohio Revised Code § 4112.02(A), it is an unlawful discriminatory practice in the state for "any employer, because of ... sex ... to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Ohio Revised Code § 4101.17 forbids discrimination based upon age.[6]

In reviewing claims under Ohio Revised Code § 4112.02 and 4101.17(A), Ohio uses the same standard employed in the review of cases under Title VII of the Civil Rights Act of 1964.[7] *Barker v. Scovill, Inc., Schrader Bellows Div.,* 451 N.E.2d 807, 6 Ohio St.3d 146 (1983). Consequently, the Court reviews Plaintiff's federal and state age/sex discrimination claims simultaneously.[8]

Here, Plaintiff Sherman gives no direct evidence[9] of either age or sexual discrimina-

---

**6.** Ohio Revised Code § 4101.17(A) provides:

No employer shall discriminate in any job opening against any applicant or discharge without just cause any employee between the ages of forty and seventy who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee.

**7.** In *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civ. Rights Comm'n,* 66 Ohio St.2d 192, 196, 421 N.E.2d 128 (1981), the Court held:

Ohio uses the same test. In previous cases, however, we have determined that federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e et seq., Title 42, U.S.Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112. *State ex rel. Republic Steel v. Ohio Civil*

*Rights Comm.,* 44 Ohio St.2d 178, 339 N.E.2d 658 (1975); *Weiner v. Cuyahoga Community College District* (1969), 19 Ohio St.2d 35, 249 N.E.2d 907, *cert. denied,* 396 U.S. 1004, 90 S.Ct. 554, 24 L.Ed.2d 495 (1970).

**8.** Ohio Revised Code § 4112.02(N) provides right to bring private actions. It says:

(N) An aggrieved individual may enforce the individual's rights relative to discrimination on the basis of age as provided for in this section by instituting a civil action, within two years after the alleged unlawful discriminatory practice occurred, in any court with jurisdiction for any legal or equitable relief that will effectuate the individual's rights.

**9.** Upon deposition, plaintiff Sherman testified as follows:

Q. Okay. Other than what you've testified to, did anyone in the company make any

tion.[10] Having no direct evidence of discrimination, Sherman must make the showing described in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

In *Kline v. Tennessee Valley Authority,* 128 F.3d 337, 349 (6th Cir.1997), the Sixth Circuit described the showing required under *McDonnell Douglas:*

> When a plaintiff attempts to establish its case using the McDonnell Douglas– Burdine paradigm, the evidence which establishes the prima facie case is extremely important. In order to prove a prima facie case of discrimination, a plaintiff must show: 1) that he is a member of a protected group, 2) that he was subject to an adverse employment decision, 3) that he was qualified for the position, and 4) that he was replaced by a person outside of the protected class. *Id.* quoting *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1246 (1995) (citing *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992)).

The *McDonnell Douglas* framework consists of three stages. At the first stage, the plaintiff must establish a *prima facie* case that the employer discriminated against her. Second, the employer can produce evidence of a legitimate, nondiscriminatory reason for its action. Finally, the plaintiff attempts to discredit the employer by proving that the employer's reason was a pretext for discrimination.

In the first stage, the plaintiff has the initial burden of establishing, by a preponderance of the evidence, a *prima facie* case.

A plaintiff can do this by showing (1) the plaintiff is a member of a class protected by Title VII; (2) the plaintiff was qualified for a job; (3) the plaintiff was terminated, despite her qualifications; and (4) after this termination, the employer filled the position with a nonmember of the protected class.[11] Once shown, the *prima facie* case requires the employer to go forward with evidence of a nondiscriminatory intent. The *prima facie* case creates a refutable presumption that the real reason was discriminatory. In *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978) the Supreme Court further explained this.

> [W]e are willing to presume this largely because we know from our experience that more often than not people do not act in a totally arbitrary manner, without any underlying reasons, especially in a business setting. Thus, when all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts only with some reason, based his decision on an impermissible consideration such as race. *Id.* at 577.

Since the prima *facie case* creates a presumption of discrimination, if the employer fails to respond to the *prima facie* case and if the trier of fact believes the plaintiff's *prima facie* evidence, then the plaintiff will receive judgment. Only the burden of production shifts to the employer; never does the defendant need to persuade the trier of fact that "it was actually motivated by the proffered

statement or comment which you believe is discriminatory against older women?

\*    \*    \*    \*    \*    \*

Q. So you haven't heard of one, in other words?
A. (Witness shaking head from side to side.)
Q. Is that correct?
A. That's correct.

*See* Plaintiff Sherman Dep. at Tr. 96.

The Court has reviewed plaintiff Sherman's claims of direct evidence of discrimination. The Court finds none support her claims. Thus, the claim that she was discriminated against because she made more money is neither supported nor evidence of sex discrimination. To like effect, Sherman's claims of Flippen's comment concerning an older male employee, even if believed,

show nothing to support plaintiff Sherman's claim.

**10.** The *McDonnell Douglas* formula is inapplicable, however, to cases in which the Title VII plaintiff presents credible, direct evidence of discriminatory animus. See *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523, (1985); *Terbovitz v. Fiscal Court of Adair County, Ky.,* 825 F.2d 111 (6th Cir.1987); *Blalock v. Metals Trades, Inc.,* 775 F.2d 703, 707 (6th Cir.1985), *cert denied,* 490 U.S. 1064, 109 S.Ct. 2062, 104 L.Ed.2d 627 (1989).

**11.** *McDonnell Douglas v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

reasons."[12] The employer must simply articulate a reason for his or her action through the introduction of admissible evidence.

The plaintiff keeps the burden of persuasion. This is so because the plaintiff maintains the burden of showing that the employer intentionally discriminated against the plaintiff.[13] The burden of production then shifts back to the plaintiff, who must persuade the trier of fact that the employer's articulated reason is a "pretext."

To prove that defendant American Cyanamid's reasons are pretextual, Sherman must show that the reasons have no basis in fact, that the reasons did not in fact motivate the discharge, or, if they were factors in defendant's decision, that they were jointly insufficient to motivate the discharge. *Maddox v. University of Tennessee*, 62 F.3d 843, 848 (6th Cir.1995) (citing *Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 266 (6th Cir.1986), *cert. denied*, 480 U.S. 919, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987)).

Under controlling law, Plaintiff Sherman can make a *prima facie* claim of discrimination by showing that a non-protected person similarly-situated was treated differently. To make this showing, Sherman needs to show that the persons she is being compared with were so situated as to be in a very similar situation. In *Mitchell*, the Court described this as follows:

> As the Sixth Circuit has frequently phrased the requirements of a prima facie claim of disparate treatment using such a "comparable non-protected person was

treated better" element as one of the requisites, the plaintiff must produce evidence which at a minimum establishes (1) that he was a member of a protected class and (2) that for the same or similar conduct he was treated differently than similarly-situated non-minority employees.

\* \* \* \* \* \*

It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the "comparables" are similarly-situated in all respects. Thus, to be deemed "similarly-situated", the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Id* at 582–83 (citations omitted).

As related, *McDonnell Douglas* requires a discharged employee, *who has been replaced*, to show that they were: (1) members of a protected class; (2) subjected to an adverse employment action; (3) qualified for the position; and (4) replaced by a male or substantially younger person. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 116 S.Ct. 1307, 1309, 134 L.Ed.2d 433 (1996).

In a corporate reorganization situation involving job loss, a dismissed plaintiff cannot show the fourth element of the evidentiary framework because the employer has not

---

**12.** In *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the Court explained this as follows:

> The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiffs. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be

legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the *prima facie* case is rebutted, and the factual inquiry proceeds to a new level of specificity. Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's *prima facie* case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext. The sufficiency of the defendant's evidence should be evaluated by the extent to which it fulfills these functions.

**13.** In *Burdine*, the Court wrote that the explanation must be "legally sufficient to justify a judgment for the defendant" if it were believed by the trier of fact.

replaced him. See *Sovacool v. General Tire, Inc.,* 108 F.3d 1377 (6th Cir.1997); *Barnes v. GenCorp Inc.,* 896 F.2d 1457, 1465 (6th Cir. 1990). In a reorganization situation, the plaintiff not only must show that she was female or more than forty, was discharged, and was qualified, but must also present "additional direct, circumstantial, or statistical evidence tending to demonstrate that the employer singled out the plaintiff for discharge for impermissible reasons." *Id.;* see also *Ridenour v. Lawson Co.,* 791 F.2d 52, 57 (6th Cir.1986).[14]

■ In August 1994, the defendant terminated Sherman with three men and one other woman. Of those *terminated,* all were younger than Sherman and the majority were male. In this respect, the group chosen for discharge gives no suggestion that the defendant discharged the plaintiff for impermissible reasons.

The group retained after Sherman's separation does not show the use of impermissible reasons in her firing. After the discharges, nineteen of thirty-one Cleveland employees were female.

Plaintiff Sherman also claims that defendant discriminated against a subclass of older women. In this regard, Sherman makes a claim of "sex plus" discrimination.

■ The Supreme Court has adopted the proposition that sex considered with a second characteristic—"sex plus"—can delineate a "protected group" and can therefore serve as the basis for a Title VII suit. See *Phillips v. Martin Marietta Corp.,* 400 U.S. 542, 91 S.Ct. 496, 27 L.Ed.2d 613 (1971). In *Martin Marietta,* the defendant refused to hire women with pre-school-aged children while hiring men who (viewed from the employer's perspective) had the same problem. While having this policy, the employer continued hiring women, 75 to 80 percent of those hired for the position were women. Nevertheless, the Court held that "permitting one hiring policy for women and another for men—each having pre-school-age children"—violated Title VII. Under the standard announced in *Martin Marietta,* women are to be afforded job opportunities on an equal footing with men. See *Fisher v. Vassar College,* 70 F.3d 1420 (2nd Cir.1995).

At trial, plaintiff Sherman would need show that the defendant treated her differently from similarly situated members of the opposite sex. In responding to a motion for summary judgment, Sherman "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

Plaintiff Sherman needs to show that the defendant treated a male near her age differently. Sherman must also show that the comparable male is similarly-situated in all respects. The individuals with whom the plaintiff seeks to compare her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Mitchell,* 964 F.2d 577, 582–83.

Plaintiff Sherman identifies several medical sales representatives in the Cleveland District who were lower ranked than Sherman yet were retained at the time defendant terminated Sherman. She says Fred Karm, Tonda DiPlacido, and Robert McCarthy, Jr., were all ranked lower. DiPlacido is a female. McCarthy is a male who is younger than Sherman. Karm is a male who is older than

---

14. Plaintiff Sherman misrepresents the record to this Court. In her brief opposing summary judgment, Sherman says:

"There is evidence that would support a finding that Sherman was terminated by Defendant ACC on or about August 16, 1994 because of her status as an older woman (Larry McVay dep. tr. at Ex. 11)." Plaintiff's opposition brief at 5.

However, the Court has reviewed McVay's deposition (Tr. at Exhibit 11) and finds absolutely nothing supporting Sherman's representation to this Court.

Sherman.[15]

In response, Defendant American Cyanamid gives evidence that Karm was not similarly-situated in all respects. While acknowledging that Karm, like Sherman had received similar ratings in 1993, American Cyanamid says Karm significantly outperformed Sherman in 1994. At the time of the layoffs, Karm was outperforming Plaintiff in the sales of key products. For instance, Karm was 1st of 8 sales representatives in the marketing of Key Advantus; 2nd of 8 in the marketing of Suprax Tablets; 3rd of 7 in the marketing of Zosyn; 1st of 8 in the marketing of Ziac; and 7th of 8 in the marketing of Verelan. In contrast, Sherman was ranked 7th of 8 sales representatives in the marketing of Key Advantus; 8th of 8 in the marketing of Suprax Suspensions; 1st of 8 in the marketing of Suprax Tablets; 6th of 7 in the marketing of Zosyn; 7th of 8 in the marketing of Tetramune; and 4th of 8 in the marketing of Acelamune. At the time of the separation, Karm was also ranked higher than the plaintiff in Gold Cup standings. Accordingly, the Court finds that Karm was not similarly situated in all respects.

Plaintiff Sherman also says that defendant American Cyanamid retained Tonda DiPlacido, and Robert McCarthy, Jr., despite their having lower rankings than Sherman. However, Defendant American Cyanamid likewise gives evidence that DiPlacido and McCarthy were not similarly situated.

Specifically, American Cyanamid gives evidence that DiPlacido and McCarthy were outperforming the plaintiff at the time defendant decided to separate Sherman. The defendant shows that while DiPlacido and McCarthy were ranked lower than the plaintiff at year-end 1993, they were outperforming the plaintiff in 1994 Gold Cup points.[16] Defendant American Cyanamid shows that DiPlacido was outperforming the plaintiff in the sales of key products.[17] Plaintiff Sherman does not show that DiPlacido and McCarthy were similarly situated in all ways.

Also, plaintiff's comparison with DiPlacido and McCarthy does not support plaintiff's "sex plus age" claim. A "sex plus age" claim necessarily involves comparison with a male, otherwise similarly situated, here a similarly situated older male. *Coleman v. B–G Maintenance Management of Colorado, Inc.*, 108 F.3d 1199, 1202–1204 (10th Cir.1997) (stating "gender-plus claimants must establish that they were treated differently from similarly situated members of the opposite sex."). In a sex-plus discrimination case, the Title VII plaintiff does not allege that an employer discriminated against a protected class as a whole, but rather that the employer disparately treated a subclass within the protected class. Thus, Title VII prohibits employers from treating older women differently than older men, but it does not protect age alone. *Fisher*, 70 F.3d at 1447. To establish a gender-plus age claim, plaintiff Sherman would need show that defendant American Cyanamid treated older women less favorably than it treated older men. Crucially, the comparison must be with like age men.

In the instant case, Plaintiff Sherman fails to show material facts sufficient to support her claim of gender discrimination under Title VII or Ohio Revised Code § 4112.02(A).

## VII

Plaintiff Sherman separately claims that American Cyanamid discriminated against her because of age. To establish a *prima facie* case of age discrimination, Sherman must show that the defendant treated her differently than similarly-situated non-

---

**15.** DiPlacido's date of birth is April 24, 1961. McCarthy's date of birth was October 19, 1965,. Karm's date of birth is October 22, 1939.

**16.** Defendant American Cyanamid suggests that the year end 1993 rankings are less important. Defendant shows that the year end 1993 ranking placed James Kiraly (male, age 34) and Julie Carr (female, age 27), higher than Plaintiff. Despite this, both Carr and Kiraly were terminated in the 1994 reorganization.

**17.** Defendant American Cyanamid gives evidence that in 1994, DiPlacido had sold 97.7% of budgeted sales of Key Advantus while Sherman's had only reached 73.3%; DiPlacido had sold Key Lederle 125% of quota on Ziac and 124.9% of quota on Verelan while Sherman had sold only 66.2% of quota of Tetramune and 63.5% of quota of Acelamune.

protected employees. In making this showing, Sherman must again show that the "comparables" are similarly-situated in all respects. *Mitchell,* 964 F.2d at 582–83.

Plaintiff claims that Dee Dee Kvassay and Tonda DiPlacido, younger women, were treated differently.[18] At the time of plaintiff's separation, Kvassay had only been with the Company since July 1993. She outranked Plaintiff in Gold Cup standings for 1993. In 1994, Kvassay was below targets on several accounts but had higher performance ratings in sales of the priority drug Suprax suspensions. Defendant American Cyanamid defends the retention of Kvassay by suggesting she had only been with the Company for one year and had future potential to succeed. As related, DiPlacido was ranked lower than the plaintiff at year-end 1993 but was outperforming the plaintiff in Gold Cup points in 1994. Defendant American Cyanamid shows that DiPlacido was also outperforming the plaintiff in the sales of key products.

In *Mitchell,* 964 F.2d 577, 582–83, the plaintiff claimed she made out a *prima facie* case by showing that one non-minority employee had a poor attendance record and alleged that another non-minority employee cursed at her team leader but neither was fired. The *Mitchell* plaintiff argued that non-minority employees, guilty of conduct of "comparable seriousness" to the conduct for which they fired her, received more lenient treatment. The Court found that the plaintiff failed to show that the two white employees she identified as not having been fired were "similarly situated in all respects." Specifically, the Court said that "[i]t is the discrimination plaintiff's burden to establish that the other employee's acts were of 'comparable seriousness' to his or her own infraction." *Id.* at 583 n. 5.

In the instant case, the plaintiff likewise does not show that she was "similarly situated" to Kvassay and DiPlacido and thus, she fails to make out a prima facie case. As such, defendant American Cyanamid is entitled to judgment as to plaintiff's Title VII and state law sex discrimination claims. De-

fendant American Cyanamid is also entitled to judgment as to plaintiff's ADEA claim.

## VIII

As described, the Court finds that plaintiff Sherman fails to make out a *prima facie* case showing age or sex discrimination. Even if the plaintiff had made such a showing, the Court finds that defendant American Cyanamid has given evidence of a legitimate, nondiscriminatory reason for Plaintiff Sherman' release. Having articulated a legitimate, nondiscriminatory reason for the termination, the burden shifts back to the plaintiff to prove that the defendant's proffered reasons were pretextual. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Pretext is established by a direct showing that a discriminatory reason more likely motivated the employer or by an indirect showing that the employer's explanation is not credible.

The evidence used in determining whether Sherman was similarly situated involves determining whether American Cyanamid's explanation is credible. The defendant shows evidence that Sherman received counseling and correction. The defendant also shows evidence that Sherman produced near the bottom of its sales representatives. In reply, Sherman gives only evidence that other, non-protected employees had equivalent performance. Taken as a whole, there is nothing showing that age or sex concerns motivated defendants choice to separate Sherman rather than separate others.

The dominant purpose of Title VII is to root out discrimination in employment. *E.E.O.C. v. Shell Oil Co.,* 466 U.S. 54, 77, 104 S.Ct. 1621, 80 L.Ed.2d 41 (1984). Title VII prohibits all discrimination in employment based upon race, sex, and national origin. The statute was not intended to diminish traditional management prerogatives. Under Title VII, the employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria. The fact that a court may think that the employer misjudged the quali-

---

**18.** Dee Dee Kvassay was 36 years old at the time plaintiff Sherman was separated. Tonda DiPla-

cido was 34 years old at the time Sherman was separated.

fications of the applicants does not in itself expose him to Title VII liability, although this may be probative of whether the employer's reasons are pretexts for discrimination. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 259, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Employers may make decisions based on any non-discriminatory reason. "A reason is legitimate for purposes of the civil rights laws if it is nondiscriminatory, even if it is mean-spirited, ill-considered, inconsistent with humane personnel policies, or otherwise objectionable." *Galbraith v. Northern Telecom, Inc.,* 944 F.2d 275, 282 (6th Cir.1991), *cert. denied,* 503 U.S. 945, 112 S.Ct. 1497, 117 L.Ed.2d 637 (1992).

For these reasons, the Court finds that defendant American Cyanamid is entitled to judgment as to all claims.

IT IS SO ORDERED.