**John MARANO, Plaintiff,**

v.

**AIRCRAFT BRAKING SYSTEMS, INC., Defendant.**

**No. 5:00CV2286.**

United States District Court, N.D. Ohio, Eastern Division.

April 9, 2001.

F. Benjamin Riek, III, Riek & Associates, Cleveland, OH, for John Marano, Plaintiffs.

Edward C. Kaminski, Amer Cunningham Co., LPA, Akron, OH, for Aircraft Braking Systems, Inc., Defendants.

## OPINION

GWIN, District Judge.

On February 5, 2001, Defendant Aircraft Braking Systems, Inc. ("Aircraft Braking"), filed a motion for summary judgment [Doc. 26]. Plaintiff Marano opposes the motion. With his opposition, the plaintiff filed a motion to strike portions of a supporting affidavit filed by the defendant [Doc. 31]. For the reasons stated below the Court grants the defendant's motion for summary judgment.

## I. Background

In this case, Plaintiff Marano says he was fired because of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., and Ohio public policy. He also says the Defendant Aircraft Braking retaliated against him for pursuing his rights under the ADEA by refusing to hire him as a temporary worker. In support of his ADEA claim, Marano states he was fired even though he was more qualified than an employee who was kept. Additionally, Marano says the defendant did not follow its own separation procedures when it retained a contract-employee engineer at the time it fired the plaintiff.

Defendant Aircraft Braking says Marano lost his job as part of a reduction in force. In firing Plaintiff Marano, the defendant says Marano was chosen because he ranked last in a performance review of the plant engineers within the carbon production department. The defendant denies the plaintiff's age was a factor in his firing.

On February 5, 1996, Aircraft Braking hired Marano as a senior plant engineer and assigned him to work on the expansion of Aircraft Braking's carbon production facility in Akron, Ohio. After the number of expansion related projects declined, he performed general plant engineering work. This included work on process and new equipment projects in Plant F of Aircraft Braking's facility. At the time of his hiring, Marano had a bachelor's degree in mechanical engineering and eighteen years of plant engineering experience.

During his service with Aircraft Braking, Marano received two performance evaluations. His first evaluation covered

the period from July 1996 to August 1997. Marano was rated "satisfactory" in all categories, the highest rating available on the evaluation. While employees are usually shown their evaluations by their supervisors, Marano testifies he never met with James Fondriest, the director of plant engineering, to read and sign his evaluation.

The plaintiff's second evaluation covered the period from August 1997 to January 1999. In this second evaluation, Defendant Aircraft Braking ranked Marano "satisfactory" in all but one category. Under the job responsibility heading "[c]ommunication and interface with other departments as well as own department in professional manner" he was given a "satisfactory but needs improvement" rating. On a separate "values" section of the evaluation, Fondriest indicated Marano needed improvement on his customer focus.[1] Marano discussed the second evaluation with Fondriest and signed his evaluation.

As a plant engineer Marano had the responsibility to submit weekly updates of his projects. Marano submitted these updates to keep Mike Carver, the general manager of carbon operations, abreast on the status of the projects. Carver testified that Marano often delayed providing him necessary information. Carver listed several instances where Marano's failure to keep him informed adversely affected the carbon expansion project. Fondriest testified that Carver spoke to him about his difficulties with Marano. Fondriest also testified that he spoke to Marano in October 1997 about his performance problems.

In his affidavit, Marano states he timely filed his weekly updates and never met with Fondriest in October 1997. He also says Carver and Fondriest did not speak to him about the timeliness of his reporting or his performance on specific projects.

In late 1999, Aircraft Braking decided to reduce personnel to meet its 2000 budget. In an attempt to avoid layoffs Aircraft Braking offered an enhanced early retirement package to salaried employees, but not enough people accepted. Aircraft Braking then decided to layoff fourteen salaried employees. James Williams, the vice-president of the operations group, decided that Fondriest needed to separate one salaried employee from the departments he oversaw.[2] Fondriest decided a reduction of one plant engineer would minimize the adverse effect on his organization.

Section 3.1 of Aircraft Braking's policy on company initiated personnel reductions details how employees are selected for layoffs:

> Selection of employees to be reduced within a functional unit or department will normally be on the basis of (1) job performance by classification, or (2) continuous service by classification, or (3) job elimination. Contract, temporary, reduced hours, and part-time employees shall be considered for reduction before full-time employees.

> If either job performance or job elimination is to be the basis of selection, a request containing the written documen-

---

1. The customer focus value is described as: "The individual recognizes that success depends on quality products and services. The individual is dedicated to satisfying both external an internal customers." Plaintiff's Exhibit 21.

2. As the director of plant engineering, Fondriest was responsible for approximately twenty-two salaried employees spread between the plant engineers, maintenance department, numerical control technicians, metrology lab technicians, a chemist in the chemistry lab, and the group leader of the environmental services department. Fondriest Deposition Vol. II at 184, 188.

tation and justification for the basis of selection must be submitted for approval by Human Resources and reviewed by Legal Counsel.

Although there is no single procedure for using job performance as the basis of selection, the basis for selection by job classification will be by order of ranking, starting with the lowest ranked employee in the affected classification.

Plaintiff's Exhibit 34. At the time of the layoffs, Aircraft Braking had five men working as plant engineers.[3] Scott Kidder, a non-salaried, contract engineer was also working at that time.

Fondriest testified he decided to fire Marano based on his job performance. He prepared a peer comparison worksheet listing his reasons for choosing to layoff Marano and retaining the other engineers.[4] Fondriest submitted this worksheet and the plant engineers' most recent performance evaluation to a committee.[5] The committee consisted of Patricia Harness, a human resources specialist, Edward Searle, the vice president of human resources, Michael Manella, corporate legal counsel, and Alan Pearl, outside legal counsel. The committee agreed with Fondriest and authorized Marano's layoff. He was fired on December 10, 1999. Marano was fifty years old at the time of his layoff.

After he was fired, Marano used a placement agency to help find another job. In the spring of 2000, Plaintiff Marano says he asked the agency to forward his resume to Aircraft Braking for a contract product engineer position. Marano says he was told that Aircraft Braking was not interested in having him return. Roger Tanski, the person at Aircraft Braking who spoke to the placement agency representative, received three resumes in reference to the position but none of them belonged to Marano. Tanski also says he never discussed Marano with the placement agency representative who contacted him about the open position.

In January 2000, Marano filed a charge of age discrimination with the Ohio Civil Rights Commission and Equal Employment Opportunity Commission ("EEOC"). On June 15, 2000, he received a right to sue letter from the EEOC. He commenced this suit on September 11, 2000.

In his complaint, Marano says Defendant Aircraft Braking violates state and federal law. In count I, he alleges age discrimination in violation of § 4(a)(1) of the ADEA, 29 U.S.C. § 623(a)(1). In count II, Marano alleges his discharge without just cause violates Ohio public policy as expressed in Ohio Rev.Code §§ 4112.02(A), 4112.14, and 4112.99. Finally, in count III, he alleges retaliation in violation of § 4(d) of the ADEA, 29 U.S.C. § 623(d), and Ohio Rev.Code 4112.02(I).

---

**3.** Besides Marano, the engineers were George Pushpak, hired on February 28, 1977, Dennis McLaughlin, hired on January 5, 1981, Jim Davies, hired on May 7, 1982, and Steven Henry, hired on July 6, 1998.

**4.** Fondriest listed five reasons for selecting Marano for layoff: "1) Level of performance less than peers; 2) Provides no exclusive, critical skills to Plant Engineering; 3) Value as "team player" to customers is less than peers; 4) Customer satisfaction level less than peers; 5) Least computer/CAD literate of Plant Engineers." Plaintiff's Exhibit 35.

**5.** The plaintiff challenges Fondriest's statement that he submitted performance evaluations of all five plant engineers. Bob Stevens, a maintenance supervisor, testified Steven Henry stated his performance evaluation was not completed before the layoff. Henry's most recent performance evaluation is signed by Henry and dated December 7, 1999. In his testimony, Henry denies he told Stevens his performance evaluation was not done until after the layoff.

The defendant's motion is considered below.

## II. Legal Standard

A court may grant summary judgment only if the materials properly before the court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). In deciding whether the moving party has met this burden, a court must view the facts and all inferences drawn from them in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

A factual dispute precludes summary judgment only if it is material, that is, if it relates to a matter essential to adjudication. The dispute must concern facts that, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The factual dispute must also be genuine. The facts must be such that if proven at trial a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. 2505. "The disputed issue does not have to be resolved conclusively in favor of the nonmoving party, but that party is required to present significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street*, 822 F.2d at 1435 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Thus, the judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue a proper jury question. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *60 Ivy Street*, 822 F.2d at 1436 (quoting *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505). Accordingly, viewing the evidence in the light most favorable to the nonmoving party, the court should determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251, 106 S.Ct. 2505.

## III. Plaintiff's Motion to Strike

As a preliminary matter, the plaintiff has filed a motion to strike aspects of Patricia Harness's affidavit and accompanying exhibit which was filed in support of the defendant's motion for summary judgment [Doc. 31]. A portion of the plaintiff's motion has merit.

■ Affidavits may be submitted in support and opposition to a motion for summary judgment. Fed.R.Civ.P. 56(c). An affidavit used in a summary judgment preceding "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed R. Civ. P. 56(e). While an affidavit must put forth facts admissible at trial, the facts do not have to be in an admissible form. *North American Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1283 (6th Cir. 1997).

First, the plaintiff attempts to strike an exhibit attached to Harness's affidavit. The exhibit is the front page of a job

description for a senior plant engineer. Marano claims the page was not produced during discovery. The defendant claims it was never asked for. There is nothing remarkable about the exhibit. The information contained on the disputed page was testified too by Fondriest during his deposition. The Court sees no need to strike the exhibit.

■ Second, Marano asks that Harness's assertion that three years of work experience are equivalent to one year college education be stricken from her affidavit.[6] The plaintiff says the witness has no foundation under Fed.R.Evid. 602 to make such a statement. However, Harness, in a second affidavit filed with the defendant's reply brief, states she developed the criteria while in the defendant's human resources department and has been using the standard for the last fifteen years. The Court holds that Harness has the necessary experience to make the statement she does. The motion to strike that portion of her affidavit is denied.

■ Marano next moves to strike Harness's assertion that a "contributor" rating on a performance evaluation is equal to a "C" academic grade.[7] The plaintiff challenges this statement under Fed.R.Evid. 602 and 701. The defendant relies on Harness's second affidavit but does not clearly oppose the motion on this claim.

The performance evaluations at issue have five ratings: Superior Contributor, High Contributor, Contributor, Marginal Contributor, and Unsatisfactory. The witness clearly used the "C" analogy because the "Contributor" rating was the third best evaluation possible. Harness's statement is not needed to clarify this point for the jury. The Court grants the motion to strike Harness's assertion about a "contributor" rating being equal to a "C" academic grade.

■ Finally, the plaintiff seeks to strike Harness's statement as to what Fondriest said to the committee about Marano's qualifications.[8] The plaintiff says the statement is hearsay under Fed.R.Evid. 802. The defendant did not respond to this claim.

Harness's statement is clearly hearsay. Furthermore, Fondriest was thoroughly deposed and his testimony figures heavily in the summary judgment arguments made by the parties. The Court grant's the plaintiff's motion to strike with respect to Harness's statement about Fondriest's words in the committee meeting.

IV. Analysis

A. Age Discrimination

■ Under the ADEA it is unlawful for an employer to discharge or fail to hire any individual 40 years of age and older or otherwise discriminate against that person with respect to compensation, terms, conditions, or privileges of employment "because of such individual's age." 29 U.S.C. § 623(a). An employer can violate the ADEA when it prefers a younger employee, even if that younger employee is within the protected class of workers aged 40 and over. *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1466 (6th Cir.1990); *see also O'Connor v. Consolidated Coin Caterer's Corp.*, 517 U.S. 308, 312, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996).

■ Since the plaintiff gives no direct evidence of age discrimination, he must

---

6. Located in the second paragraph of Harness's first affidavit.

7. Located in the last sentence of the third paragraph of Harness's first affidavit.

8. Located in sixth paragraph of Harness's first affidavit.

make the showing described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Blackwell v. Sun Elec. Co.*, 696 F.2d 1176, 1180 (6th Cir.1983) (courts should allocate burden of proof in ADEA case according to *McDonnell Douglas–Burdine* analysis the Supreme Court adopted for Title VII cases).[9]

■ A plaintiff establishes a prima facie case of age discrimination by showing: 1) that he is a member of a protected group; 2) that he was subject to an adverse employment decision; 3) that he was qualified for the position; and 4) that he was replaced by a younger person. *Skalka v. Fernald Envtl. Restoration Mgmt. Corp.*, 178 F.3d 414, 420 (6th Cir.1999).

■ In the context of a reduction in force,[10] the fourth element is modified because the employee is not actually replaced. *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 371 (6th Cir.1999). Instead, the plaintiff must present "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out [the plaintiff] for discharge for impermissible reasons." *Id.* (quoting *Barnes*, 896 F.2d at 1465). This "extra" evidence must be "sufficiently probative" to permit the fact finder to believe the defendant intentionally discriminated against the worker based on age. *Barnes*, 896 F.2d at 1466.

■ If the plaintiff makes out a prima facie case, the burden shifts to the employer to describe a legitimate, nondiscriminatory reason for the employment action. *McDonnell Douglas*, 411 U.S. at 802–03, 93 S.Ct. 1817; *Barnes*, 896 F.2d at 1466. If the employer gives a legitimate, nondiscriminatory reason for the employment action then the employee must show the employer's stated reason is pretextual. *McDonnell Douglas*, 411 U.S. at 802–03, 93 S.Ct. 1817; *Godfredson*, 173 F.3d at 371.

The parties do not dispute the first two elements of the plaintiff's prima facie case. Marano is more than 40 years old and his firing was clearly an adverse employment action.

■ The plaintiff also meets the third element of a prima facie case. Marano served as a plant engineer for over three years before he was fired. He had an engineering degree in mechanical engineering and eighteen years of experience in plant engineering when he was first hired. While Carver complained to Fondriest about Marano's timeliness in submitting information and his interaction

9. The *McDonnell Douglas* formula is inapplicable, however, to cases in which the Title VII or discrimination plaintiff presents credible, direct evidence of discriminatory animus. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985); *Blalock v. Metals Trades, Inc.*, 775 F.2d 703, 707 (6th Cir.1985).

10. The United States Court of Appeals for the Sixth Circuit describes a reduction in force as follows:

A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.

*Barnes*, 896 F.2d at 1465.

The current case clearly is a reduction in force. Marano was not replaced and the vast majority of his work was taken on by James Davies, one of the other plant engineers.

with customers, there is nothing in the record indicating he was unqualified to perform the job of plant engineer. A reasonable jury could easily find Marano was qualified to perform the job from which he was fired.

To meet the fourth element of his prima facie case, the plaintiff must present "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out [the plaintiff] for discharge for impermissible reasons." *Barnes*, 896 F.2d at 1465. Marano argues that *Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir.1992), holds that this element is established when a "comparable non-protected person [is] treated better." 964 F.2d at 582–83. At the same time, the plaintiff reminds the Court an ADEA plaintiff need not be replaced by someone outside the protected class to establish a prima facie case. *O'Connor*, 517 U.S. at 312, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). Instead, it is sufficient if the replacement is substantially younger than the plaintiff as that is a more reliable indicator of age discrimination. *Id.* at 313, 116 S.Ct. 1307.

■■■ The plaintiff does not establish the fourth element of his prima facie case. First, the ages of the other four plant engineers were never provided to the Court.[11] This lack of information weighs in favor of finding that Marano failed to establish a prima facie case.

Second, Marano's reliance on the standard articulated in *Mitchell* is misplaced. *Mitchell* did not involve a reduction in force. Instead, *Mitchell* involved a claim by a 51–year old black woman that she was terminated because of her age and race. The *Mitchell* court did not address the modified fourth element of a prima facie case specific to reduction in force situations.[12] *Mitchell* does not establish the appropriate standard for reductions in force.

However, even assuming that the *Mitchell* standard is appropriate for a reduction in force, the plaintiff has not established the fourth element of his prima facie case. In *Mitchell*, the Sixth Circuit held that a plaintiff using the "comparable non-protected person was treated better" method to establish a prima facie case for employment discrimination must show "that for the same or similar conduct he was treated differently than similarly situated non-minority employees." 964 F.2d at 582–83. The court was quite clear that:

... to be deemed "similarly situated", the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

**11.** In his memorandum in opposition, the plaintiff appears to assert that Steve Henry, the plant engineer with less seniority than Marano, is over the age of 40. Plaintiff's Opposition at 9. However, Henry's exact age, and the ages of the other plant engineers, is not provided.

**12.** The plaintiff also cites to *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir.1998), as supporting the proposition the fourth element of a prima facie case is

satisfied by showing a "comparable non-protected person was treated better." 154 F.3d at 350. While *Ercegovich* cites *Mitchell* for this proposition, the opinion does not decide whether the plaintiff made a sufficient showing to make out a prima facie case. The court assumes a prima facie case on its way to upholding summary judgment for the defendant because the plaintiff failed to show pretext. *Id.*

*Id.* at 583. Marano has not come forth with any probative evidence showing Aircraft Braking treated the other plant engineers differently than he.

■ In making his claim that Plaintiff Marano discriminated against him because of his age, Plaintiff Marano argues that Henry and Kidder were retained while he was fired. Henry did not have an engineering degree. Instead, his previous engineering experience was considered sufficient to meet the education requirement for a senior plant engineer position. Henry also had less time at Aircraft Braking than did Marano. Nonetheless, Henry underwent the same evaluation process to which Marano was subjected. While Marano did not like the result, he does not produce any evidence showing the defendant treated him differently than Henry during the evaluation process.

■ Kidder, a non-salaried, contract plant engineer, was performing similar work at another building at the Akron facility at the time of Marano's layoff. However, Kidder was not similarly situated to Marano. As a contract employee, Kidder's status was different from that of a salaried engineer and he was not subject to the same system of performance evaluations. Besides his assertion that age was the reason for his firing, the plaintiff has not provided any additional "substantially probative" evidence that would permit a fact finder to believe the defendant intentionally discriminated against Marano because of his age.

■ Even if Marano could establish a prima facie case, he has not presented sufficient evidence to show Defendant Aircraft Braking's stated reason for firing him was pretextual. To show an employer's offered reasons for the employment action is pretextual a plaintiff must show: (1) the offered reasons have no basis in fact; (2) that the employer's reasons did not actual-

ly motivate the discharge; or (3) the offered reasons were not sufficient to motivate discharge. *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir.1994). Under the first and third types of showing, once the plaintiff has disproved the employer's offered reason, the fact finder may infer discrimination from the facts presented in the prima facie case. *Kline v. Tennessee Valley Auth.,* 128 F.3d 337, 347 (6th Cir.1997); *see also Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 147–48, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The plaintiff need not introduce additional evidence of discrimination. *Kline,* 128 F.3d at 347.

■ However, in claiming that the employer's reasons did not actually motivate the discharge the second type of showing, the plaintiff is required to submit additional evidence. *Kline,* 128 F.3d at 346 (citing *Manzer,* 29 F.3d at 1084). Additional evidence is necessary because the plaintiff does not challenge the defendant's reason so no inference of discrimination arises *Id.*

■ Marano argues the defendant did not follow its own policy when choosing to fire him. Specifically, the plaintiff claims that Aircraft Braking should have fired Kidder, a contract employee, before firing Marano. The plaintiff also says Henry's performance evaluation was not completed before Marano's layoff so that it could not have been submitted to the firing committee for their consideration.

■ Section 3.1 of Aircraft Braking's separation policy states "[c]ontract, temporary, reduced hours, and part-time employees shall be *considered* for reduction before full-time employees." (emphasis added). Contrary to the plaintiff's assertion, the policy does not require that all contract employees within a department be fired before salaried employees can be laid

off. Uncontradicted testimony by Searle shows that some contract employees were laid off but it was still necessary to reduce fourteen salaried positions.

The record also clearly shows that Henry signed and dated his performance evaluation on December 7, 1999, and that Fondriest submitted all of the performance evaluations to the firing committee. As required by Aircraft Braking's separation policy, after reviewing the documents upon which Fondriest relied, the committee agreed with Fondriest's decision to lay off Marano based on performance. For these reasons, the plaintiff fails to show the defendant's actions were pretextual.

Plaintiff Marano also asserts Aircraft Braking's reason for his firing is pretextual because he was fired even though he had an engineering degree while Henry, who did not have a degree, was retained. The plaintiff makes much of a statement by Searle that a plant engineer needed a degree to be hired.[13] However, the job description of senior plant engineer lists the education requirement as an "[e]gineering degree, or equivalent however acquired." Testimony by Fondriest and Patricia Harness, a human resource specialist for the defendant, states the defendant hired people without engineering degrees if they had sufficient engineering work experience. Harness testifies that Henry had sufficient engineering work experience to meet the education requirement. Both

Fondriest and Harness were involved in the hiring of Henry while Searle was not. The plaintiff has not presented sufficient evidence to show Aircraft Braking's stated reason for firing Marano was pretextual.

The plaintiff's additional arguments that Aircraft's stated reason is pretextual are without merit. Therefore, the Court grants summary judgment to the defendant on this claim.

B. Violation of Ohio Public Policy

■ The plaintiff brings a claim for violation of public policy as embodied in Ohio Rev.Code §§ 4112.02(A), 4112.14, and 4112.99. Specifically, Ohio Rev.Code § 4112.14 forbids discrimination based on age.[14] Claims under Ohio Rev.Code §§ 4112.02 and 4112.14 use the *McDonnell Douglas* standard. *Kohmescher v. Kroger Co.*, 61 Ohio St.3d 501, 504, 575 N.E.2d 439, 441–42 (1991); *see also Sherman v. American Cyanamid Co.*, 996 F.Supp. 719, 724–25 (N.D.Ohio 1998). However, the plaintiff has not brought a claim directly under the statute. Instead, he has brought a claim for a violation of the public policy underlying the statute.

■ Ohio recognizes a public policy tort for wrongful discharge. *Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 150–51, 677 N.E.2d 308, 321 (1997); *Painter v. Graley*, 70 Ohio St.3d 377, 384, 639 N.E.2d 51, 56–57 (1994). In *Kulch*, the

13. Searle testified as follows:

> Q: Did Mr. Henry perform any mechanical engineering activities, to your knowledge?
> A: Not that I am aware of.
> Q: Mr. Marano had a degree in mechanical engineering; did he not?
> A: He had to have a degree to be hired as a plant engineer.
> Q: Then I must ask how did Mr. Henry get hired without a degree as a plant engineer?
> A: I don't know that Mr. Henry does not have a degree.

Searle Deposition at 39–40.

14. Ohio Rev.Code § 4112.14(A) provides:

> No employer shall discriminate in any job opening against any applicant or discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee.

Ohio Supreme Court allowed a plaintiff to pursue a separate public policy tort even though he did not comply with the Ohio Whistleblower Act. 78 Ohio St.3d at 134, 677 N.E.2d at 310. A plaintiff can bring a common law claim for wrongful discharge in violation of the public policy against age discrimination and the public policy expressed in Ohio Rev.Code § 4112.01 et seq. *Livingston v. Hillside Rehab. Hosp.*, 79 Ohio St.3d 249, 680 N.E.2d 1220 (1997) (On authority of *Kulch*, Ohio Supreme Court reversed appellate court that had held that no public policy exception to a claim brought under [Ohio Rev.Code § 4112.14] existed as the statute provided a complete remedy to the plaintiff); *see also Arthur v. Armco, Inc.*, 122 F.Supp.2d 876, 879–80 (S.D.Ohio 2000) (citing *Livingston*, 79 Ohio St.3d 249, 680 N.E.2d 1220).

 To successfully make out a claim for wrongful discharge in violation of public policy, a plaintiff must demonstrate: (1) that [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element); (2) that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element); (3) the plaintiff's dismissal was motivated by conduct related to the public policy (the causation element); and (4) the employer lacked overriding legitimate business justification for the dismissal (the overriding justification element). *Kulch*, 78 Ohio St.3d at 151, 677 N.E.2d at 321 (adopting test from H. Perritt, *The Future of Wrongful Dismissal Claims: Where Does Employer Self Interest Lie*, 58 U. Cin. L.Rev. 397, 398–99 (1989)).

 Plaintiff Marano cannot make out a claim for the public policy tort. The fourth element of the tort requires that the employer lack an overriding legitimate business justification for the dismissal. Aircraft Braking's reduction in force required Fondriest to fire one salaried employee from the departments he oversaw. Marano was chosen because he was rated the lowest of all the plant engineers. The Court holds the defendant's reduction in force provides a sufficient business justification for the firing. *See, e.g., Godfredson v. Hess & Clark*, 996 F.Supp. 730, 739 (N.D.Ohio 1998). Therefore, the defendant is entitled to summary judgment on this claim.

### C. Retaliation

 The plaintiff has brought a claim for retaliation under federal and state law. 29 U.S.C. § 623(d); Ohio Rev.Code § 4112.02(I). When reviewing retaliation claims, Ohio courts often look to federal case law. *Ohio Civ. Rights Comm. v. Ingram*, 69 Ohio St.3d 89, 95, 630 N.E.2d 669, 674 (1994); *Courtney v. Landair Transport, Inc.*, 227 F.3d 559, 565 (6th Cir.2000). To establish a prima facie case of retaliation in violation of the ADEA, Marano must show that: "(1) he engaged in conduct protected under the ADEA; (2) he was subjected to an adverse employment action at the time of, or after, the protected conduct occurred; and (3) there was a causal link between the protected activity and the adverse employment action." *Evans v. Pugh*, 902 F.2d 689, 693 (8th Cir.1990) (quoting *Wentz v. Maryland Casualty Co.*, 869 F.2d 1153, 1154–55 (8th Cir.1989)).

 If Marano meets his initial burden of establishing a prima facie case, then the defendant must give a legitimate, nondiscriminatory reason for its action. *Courtney*, 227 F.3d at 565–66. If the defendant gives a nondiscriminatory reason, then the plaintiff must show that the articulated reason is only a pretext for the adverse action. *Id.* at 566.

Plaintiff Marano says Aircraft Braking retaliated against him by failing to hire him for an open contract product engineer position after he filed an age discrimination charge with the Ohio Civil Rights Commission and EEOC. The only evidence in support of this claim comes from Marano's affidavit:

17. During the course of my efforts to find employment, I contracted with Riverfront Staffing of Cuyahoga Falls, Ohio to assist me. I was assigned to work with my [sic] Michael Ruan, a staffing specialist.

18. In the spring of 2000, I became aware from Riverfront that [Aircraft Braking] was seeking a contract plant engineer. I authorized Riverfront to forward my resume to the Human Resources Department of [Aircraft Braking].

19. After a period of time, I was advised that Aircraft Braking Systems was not interested in having me return to the company as a contract employee.

20. In January, 2000 I filed charges of age discrimination with the Ohio Civil Rights Commission in Akron, Ohio. I filed these charges of discrimination several months prior to becoming aware of the opening for a contract plant engineer at [Aircraft Braking].

Marano's Affidavit at ¶¶ 17–20.

The plaintiff fails to make out a prima facie case of retaliation under the ADEA. Specifically, Marano has not met the second element of his claim, that he was subject to an adverse employment action. The plaintiff does not identify who told him Aircraft Braking did not want him to return. Even the statement contained in his affidavit, "I was advised that Aircraft Braking Systems was not interested in having me return to the company as a contract employee," is not particularly sinister in nature nor implies he was being retaliated against. Roger Tanski, who worked in Aircraft Braking's human resources department, testified that in May 2000, Mike Ruan faxed him three resumes for the contract product engineer position. Ruan did not give Plaintiff Marano's resume. Tanksi did not receive Marano's resume or any other information on Marano from Ruan. A referral from a current employee filled the position. The plaintiff does not challenge the qualifications of the man whom the defendant hired.

Marano shows no evidence that Defendant Aircraft Braking even knew of his application for contract employment. Marano's mere allegation of retaliation is insufficient evidence for a reasonable jury to believe Aircraft Braking retaliated against him. The Court grants summary judgment to the defendant on this claim.

### V. Conclusion

For the reasons discussed above, the Court grants Defendant Aircraft Braking's motion for summary judgment on all claims.

IT IS SO ORDERED.

### JUDGMENT

The Court has filed its Memorandum Opinion in favor of the defendant in the above-captioned matter. The Court grants defendant's motion for summary judgment on all claims. Accordingly, this action is terminated under Fed.R.Civ.P. 58.

IT IS SO ORDERED.