Kevin ZIEGLER, Plaintiff,

v.

IBP HOG MARKETS, INC., Defendant.

No. 3:99CV7613.

United States District Court,
N.D. Ohio,
Western Division.

Feb. 6, 2002.

James A. Hammer, Mitchell, Stearns &
Hammer, Bowling Green, OH, for Plaintiff.

Catherine Adams, Squire, Sanders & Dempsey, Jill S. Kirila, Squire, Sanders & Dempsey, Columbus, OH, for Defendant.

## ORDER

CARR, District Judge.

Plaintiff Kevin Ziegler brings this action against Defendant IBP Hog Markets, Inc., claiming he was discriminated against on the basis of age. Plaintiff asserts claims under Ohio Revised Code § 4112.14 and the tort of wrongful discharge in violation of public policy. This court has jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441. Pending is defendant's motion for summary judgment pursuant to Fed. R.Civ.P. 56(c). For the following reasons, defendant's motion shall be granted.

## BACKGROUND

Defendant operates hog-purchasing stations in Fostoria and Mount Blanchard, Ohio. In 1993, defendant hired plaintiff to manage its Fostoria station and Chris May to manage its Mount Blanchard station. Both managers reported to Steven Ehman, Regional Procurement Supervisor, who was responsible for overseeing defendant's hog-buying stations in Indiana, Michigan, and Ohio.

As managers of hog-buying stations, plaintiff and Mr. May secured the purchase and transport of hogs produced in their respective areas. In soliciting hog purchases, defendant expected its buyers to call producers and to "work the country"—i.e., get out and meet the hog producers in the area to help establish personal relationships.

Starting in the mid-nineties, hog volumes began to decrease at defendant's buying stations, including the Fostoria and Mount Blanchard stations. In the beginning of 1998, defendant consolidated the Fostoria and Mount Blanchard stations by reducing the number of days each station operated, assigning one manager, Chris May, to both facilities, and terminating plaintiff's employment. Plaintiff was forty-two years old at the time of his termination and Chris May was thirty-seven years old.

Plaintiff alleges that defendant based his termination on his age in violation of R.C. § 4112.14. Additionally, plaintiff claims that he was wrongfully discharged in violation of public policy.

## STANDARD OF REVIEW

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting FED.R.CIV.P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

In deciding the motion for summary judgment, the evidence of the non-moving party will be believed as true, all doubts will be resolved against the moving party, all evidence will be construed in the light most favorable to the non-moving party, and all reasonable inferences will be drawn in the non-moving party's favor. *Eastman Kodak Co. v. Technical Servs., Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

## DISCUSSION

Plaintiff's first count alleges that defendant terminated his employment based on his age, violating R.C. § 4112.14. Plaintiff's second count alleges wrongful discharge in violation of public policy, a tort recognized under Ohio law.

### I. R.C. § 4112.14 Claim

Under R.C. § 4112.14, "[n]o employer shall ... discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee." In state age discrimination cases, the Ohio Supreme Court has adopted the three-part, burden-shifting framework established in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 357 ("Under Ohio law, the elements and burden of proof in a state age-discrimination claim parallel the ADEA analysis."); *Kohmescher v. Kroger Co.,* 61 Ohio St.3d 501, 504, 575 N.E.2d 439, 441 (1991) (The "test for determining the establishment of a prima facie cause of action in age discrimination

[is] a direct adaptation of the evidentiary standards and guidelines established by the United States Supreme Court in *McDonnell Douglas* ...."); *Barker v. Scovill, Inc.,* 6 Ohio St.3d 146, 147–48, 451 N.E.2d 807, 809 (1983).

Under the *McDonnell Douglas* approach, the plaintiff must first establish a prima facie case of discrimination. A plaintiff establishes a prima facie case of age discrimination by showing that the plaintiff: 1) was at least 40 years old; 2) was qualified for the particular position; 3) was subjected to adverse employment action; and 4) was replaced by a younger individual. *Scott v. Goodyear Tire & Rubber Co.,* 160 F.3d 1121, 1126 (6th Cir.1998).

Once the plaintiff proves a prima facie case, the burden of production shifts to the defendant to articulate a legitimate nondiscriminatory reason for its actions. *Burzynski v. Cohen,* 264 F.3d 611, 622 (6th Cir.2001). If the defendant articulates such a reason, the plaintiff must then demonstrate by a preponderance of the evidence that the defendant's proffered reason was a pretext for age discrimination. *Id.*

Defendant argues that plaintiff has failed to establish a prima facie case of age discrimination, and, alternatively, that plaintiff has failed to prove pretext. Because I agree with defendant that plaintiff has failed to prove pretext, I decline to address defendant's first argument.

A plaintiff establishes pretext by showing the defendant's legitimate, nondiscriminatory reason: 1) had no basis in fact; 2) did not actually motivate the defendant's actions; or 3) was insufficient to warrant the defendant's actions. *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir.1994). Here, plaintiff has failed to show that defendant's legitimate, nondiscriminatory reasons for his dis-

charge are pretexts for any discriminatory intent.

Defendant made two distinct business decisions leading to the elimination of plaintiff's position and, ultimately, plaintiff's discharge: 1) the decision to consolidate the Fostoria and Mount Blanchard stations under one manager; and 2) the decision to assign Chris May as manger, rather than plaintiff. Because defendant has stated separate, nondiscriminatory reasons for each decision, I shall address each separately.

## A. Consolidation of the Fostoria and Mount Blanchard Stations

■ Defendant stated that, because of declining hog volumes, it consolidated the Fostoria and Mount Blanchard stations in an effort to lower operating costs. Plaintiff argues that defendant's reason is really a pretext, but has failed to provide any evidence showing that this nondiscriminatory reason for consolidation—lowering operating costs—is a pretext for discriminatory intent on the part of the defendant.

The testimony of Steve Ehman is clear: lower operating costs would result if each station operated three days a week, instead of six, and one manager took over the responsibilities of both stations. Plaintiff presents no evidence disputing this testimony. It is undisputed that hog volumes had been decreasing at each station. Plaintiff, himself, acknowledged that hog volumes had been in decline for several years at his station. Moreover, it is undisputed that consolidation would result in lower operating costs for the defendant. Thus, I find that plaintiff has failed to produce sufficient evidence from which a reasonable juror could reject defendant's proffered explanation for consolidating the Fostoria and Mount Blanchard stations.

## B. Assignment of Chris May as Manager of Consolidated Stations

■ Defendant stated that it assigned Chris May as manager of the consolidated stations, rather than plaintiff, because of Mr. May's ability to "work the country" and overall attitude. The bulk of plaintiff's argument centers on this decision. Plaintiff argues that defendant's reasons are pretextual, and that defendant really terminated plaintiff because of his age. Plaintiff, however, has failed to provide sufficient evidence that a rational juror could find that plaintiff's age played a role in his termination.

Plaintiff argues that his additional experience in the hog-buying field establishes pretext. I disagree. While it is undisputed that plaintiff had twenty-seven years experience in the hog industry, compared to Chris May's twenty years of experience, defendant has never stated that it used work experience as a factor in making its decision. Rather, it was Chris May's attitude and ability to work the country that convinced the defendant that he would be a better choice than plaintiff. Moreover, a difference of seven years experience, alone, is not enough to establish that defendant's proffered reason is a pretext.

Plaintiff argues that Chris May's 1997 performance report is evidence establishing pretext. That report states: "Needs to buy more hogs on a daily basis—country work is required to get this done." According to plaintiff, this statement indicates that Mr. May needed to improve his country work and, therefore, defendant's stated reliance on Mr. May's country work is really a pretext. I disagree.

Mr. Ehman testified that he believed Chris May worked the country better than plaintiff. Mr. May's 1997 report does not dispute this testimony. While Mr. May's report may indicate that he needed to

improve his country work, the report does not suggest that Mr. May's country work was inferior to plaintiff's, or so poor that a business decision based on Mr. May's country work could be found to be pretextual.

This conclusion is strengthened by the fact that plaintiff's performance reports also indicated that plaintiff's country work needed improvement.[1] In fact, plaintiff, himself, acknowledged that Mr. Ehman had numerous discussions with him about the need to improve his country work.[2] Thus, while the record indicates that both plaintiff and Mr. May needed to increase country work, there is nothing in the record disputing defendant's claim that, when compared to one another, Mr. May's country work was superior to plaintiff's country work.

Finally, plaintiff attempts to show pretext by citing testimony by Steve Ehman, in which Ehman refers to plaintiff being from the "old school." Plaintiff argues this comment reveals that defendant considered plaintiff's age in making its decision to discharge him. I disagree.

Plaintiff cites the following exchange:

Q. All right. I'd like you to tell me more about attitude issues that came into play for you when it came to Kevin Zeigler and Chris May.

A. Kevin, I mean, Kevin was always—I mean, he was very—the industry changed a lot, and in Kevin's time, I think he did a tremendous job. I mean, he'd been doing it for a long time, as he had started.

Chris hadn't done it as long, maybe, the industry was changing, and producers, some of 'em were changing, and some of 'em weren't, and that was one of the responsibilities that the buyer had, to work with the producers to try to maybe change their genetics.

Some of them had the old philosophy, they didn't keep records, and the industry was changing so fast that a lot of people thought that the packing industry was putting them out of business. They put—a lot of these producers got put out themselves because of— they weren't efficient.

Q. Well, how does that relate to Kevin and his job performance?

A. Well, and I think that's, you know, one thing that Kevin probably, in my opinion, didn't excel maybe to goin' out and talkin' to some of these producers, possibly, like what Chris May did. Change is very difficult for everyone, no question about it.

．　　　．　　　．　　　．　　　．

Q. So again, I'm not—so you had these meetings. What about these meetings caused you to determine that Kevin Zeigler was not as effective as Chris May?

A. Well, just like I said, we had—you know, from the performances from these Saturday morning evaluations, what I call evaluation or numbers, numbers that they would turn

---

1. For example, plaintiff's 1997 performance report stated: "needs to do more country work" and "just needs to work real hard this next year on country work to increase count."

2. In his deposition, plaintiff stated:

Q: Did Mr. Ehman talk to you about getting out in the country?

A: Oh, yes, out in the country more.

．　．　　．　　．　　．

Q: You do though, recall him telling you at some point he wanted you to get out in the country more?
A: Oh sure, we talked about that numerous times, sure.
(Doc. 44 Ziegler deposition at 96).

in, seeing how they were doing on a weekly—weekly basis, that was one major thing that I had. Just having one-on-one meetings sometimes with, you know, Kevin, just settin' down and just talkin', his attitude— his attitude wasn't—wasn't that good. I mean, he was sometimes very bitter, the way he described he was goin', the way IBP handled the business.

Q. How would you respond if he made these sort of statements to you or -

A. Well, I—I didn't necessarily disagree with him, but, you know, it was the type of situation that that's the way—that's the way the industry was goin'. Was IBP a leader? Yes, I think they were a leader, but they—there was comments made from time to time that, you know, the producers were just a number out here by Kevin, that that's how he felt IBP felt, and I disagreed, disagree with that. I think they cherish each and every one of 'em, but they have to have their—you know, they have to have—these producers have to have good genetics. They've got to be very efficient in their business, or they're not going to be able to stay in business, and that's what happens, and that was a change, a change in times from the last—really for the early Nineties all the way up to the present day.

Q. So is it fair to say that Kevin was— his expression to you was more like the old school of the industry?

A. Yes.

(Doc. 45 Ehman deposition at 55–58).

In context, I find that this stray comment cannot be taken to manifest a decision based on age. The comment merely reflects defendant's determination that plaintiff wanted to engage in business as usual, while defendant wanted, and legiti- mately so, to change its business approach and to have plaintiff do likewise. This comment does not reflect a decision based on plaintiff's age. Rather, it reflects a decision based on plaintiff's attitude and resistance to change his business approach to conform to his employer's desires and needs.

Essentially, plaintiff has argued that he was a better choice than Chris May to manage the consolidated stations. The law, however, "does not require employers make perfect decisions, nor forbid them from making decisions that others may disagree with." *Hartsel v. Keys,* 87 F.3d 795, 801 (6th Cir.1996). "Rather, employers may not hire, fire, or promote for impermissible, discriminatory reasons." *Id.* Here, plaintiff has failed to present sufficient evidence that a reasonable juror could conclude that defendant terminated plaintiff's employment based on an impermissible discriminatory reason. Accordingly, I shall grant defendant's motion for summary judgment as it relates to the age discrimination claim under R.C. § 4112.14.

## II. Wrongful Discharge in Violation of Public Policy Claim

█ Plaintiff also requests relief under the tort of wrongful termination in violation of public policy. *See Kulch v. Structural Fibers, Inc.,* 78 Ohio St.3d 134, 677 N.E.2d 308 (1997); *Greeley v. Miami Valley Maint. Contractors, Inc.,* 49 Ohio St.3d 228, 551 N.E.2d 981 (1990). Plaintiff contends that his termination was in violation of the public policy as expressed in RC § 4112.14.

█ To maintain a cause of action for wrongful discharge in violation of public policy, plaintiff must establish: 1) a clear public policy manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the "clarity element"); 2) that dismissals under circumstances similar to plaintiff's dis-

missal would jeopardize the public policy (the "jeopardy element"); 3) the plaintiff's dismissal was motivated by conduct related to the public policy (the "causation element"); 4) the employer lacked an overriding legitimate business justification for the dismissal (the "overriding justification element"). *Kulch,* 78 Ohio St.3d at 151, 677 N.E.2d at 321.

While defendant concedes that plaintiff has satisfied the "clarity" element, defendant asserts that plaintiff's claim fails to satisfy the "jeopardy" element because adequate statutory remedies already exists under R.C. § 4112.14 and the ADEA. Defendant argues that, even if age discrimination had occurred, the failure to recognize plaintiff's tort would not jeopardize public policy because a full and comprehensive set of remedies available under both state and federal statutes exist to prevent age discrimination. The Ohio Supreme Court, however, rejected this argument in *Livingston v. Hillside Rehabilitation Hosp.,* 79 Ohio St.3d 249, 680 N.E.2d 1220 (1997), inasmuch as defendant argues that plaintiff cannot bring a public policy claim in conjunction with a statutory claim under R.C. § 4112.14.[3] *See Ziegler v. IBP Hog Market, Inc.,* 249 F.3d 509, 519 n. 10 (6th Cir.2001).

Defendant, however, also argues that plaintiff's public policy claim should fail for the same reasons that his R.C. § 4112.14 claim failed—namely, insufficient evidence from which a rational juror could find that age played a role in plaintiff's discharge. I agree. Plaintiff has failed to show that his dismissal was motivated by his age ("causation" element) or that defendant did not have a legitimate business justifica-

tion ("overriding justification" element). *See Marano v. Aircraft Braking Sys., Inc.,* 138 F.Supp.2d 940 (N.D.Ohio 2001); *Godfredson v. Hess & Clark, Inc.,* 996 F.Supp. 730 (N.D.Ohio 1998). Accordingly, I shall grant defendant's motion for summary judgment as it relates to plaintiff's claim for wrongful discharge in violation of public policy.

## CONCLUSION

It is, therefore,

## ORDERED THAT

Defendant's motion for summary judgment be, and hereby is, granted.

**So ordered.**

---

**3.** In *Livingston,* the Ohio Supreme Court, without elaboration, reversed a holding by an appeals court barring a plaintiff from pursuing a public policy tort in conjunction with a statutory claim under R.C. § 4101.17 (renumbered R.C. § 4112.14), which provides the same remedies as the common-law discharge claim. *See Livingston,* 79 Ohio St.3d at 250, 680 N.E.2d at 1221 (Cook, J., dissenting) (noting that "[p]erhaps the unavailability of a jury trial for an [RC § 4101.17] claim is the premise for the majority's decision to reverse").