**Jack D. ABEL, Plaintiff,**

v.

**AUGLAIZE COUNTY HIGHWAY DEPARTMENT, et al.,
Defendant.**

No. 3:02 CV 7517.

United States District Court,
N.D. Ohio,
Western Division.

Aug. 4, 2003.

Wendy C. Johnson and William S. McCready, Ritter, Robinson, McCready & James, Toledo, OH, for Defendants.

Francis J. Landry, Wasserman, Bryan, Landry & Honold, Toledo, OH, for Plaintiff.

## MEMORANDUM OPINION

KATZ, District Judge.

This matter is before the Court on Defendants' motion for summary judgment (Doc. No. 31) as to which Plaintiff has filed a response (Doc. No. 32). Defendants have filed a reply (Doc. No. 40) as to which Plaintiff has filed a sur-reply (Doc. No. 43). Defendants have also filed a sur-reply (Doc. No. 46).

This Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 1983 and 28 U.S.C. § 1367. For the reasons stated below, Defendants' motion for summary judgment is granted.

### BACKGROUND

On March 13, 1989, Plaintiff Jack D. Abel ("Abel") was hired by the Auglaize County (the "County") Highway Department ("Highway Department") by Defendant Douglas Reinhart ("Reinhart"), the Auglaize County Engineer.[1] In January

1. The Complaint names Reinhart in both his individual and official capacity. The High- way Department is also a named Defendant.

1992, the Highway Department adopted a Personnel Policy and Procedure Manual (the "Manual"), which was distributed to all employees including Plaintiff. Under the Manual's guidelines, Highway Department employees are prohibited from simultaneously receiving workers' compensation benefits and compensation from the County in the form of sick and/or vacation pay (i.e. "double-dipping"). Employees, including Abel, may participate in a "buy-back" program, where employees receiving workers' compensation benefits may turn in these checks and receive credit for accrued sick leave. The Manual also contains a discipline policy.

On August 13, 1997, Abel injured his hip while working on the bridge crew, and began receiving workers' compensation benefits. During 1998 and 1999 Plaintiff availed himself of the "buy-back" program, but admits that there were three instances in which he did not turn in his worker's compensation checks and received sick and/or vacation pay. In late 2000, Reinhart contacted the Ohio Bureau of Workers' Compensation ("BWC") to request a print out of all checks that had been issued to Abel. Reinhart contends that he originally requested the printouts to close that part of Plaintiff's file. He acknowledges, however, that he cross-referenced the BWC printout with Abel's payroll records, which revealed the "double-dipping." Reinhart also maintains that he waited to confront Plaintiff with this information to avoid any confusion due to an already pending appeal Abel had filed with State Personnel Board of Review ("SPBR"). That appeal arose out of an incident where Reinhart removed Plaintiff from a snow plow route, which afforded him overtime, as a disciplinary measure for Abel's refusing to drive a truck purportedly exceeding its weight limit.

Reinhart had also contacted the County prosecutor's office about Abel's "double-dipping," and was advised that the offense constituted a felony as the amount exceeded $500.00. On September 27, 2001, Gary Kuck, the Deputy Auglaize County engineer, hand-delivered a letter from Reinhart notifying Abel of a pre-disciplinary hearing (the "hearing") to be held on October 1, 2001. The letter informed Plaintiff that the hearing was to address his future employment with the Highway Department, and suggested that he bring his copy of the Manual and legal representation. While Abel brought neither, he did ask that a member of the Men's Committee be present. Reinhart refused this request.

Reinhart then presented Plaintiff with the documents, including the BWC printout and County records. Abel was informed that "double-dipping" was considered to be a Class III violation, making him subject to removal even though it was his first offense. Reinhart advised Abel that he had spoken with the County prosecutor, and that due to the amount of money involved, Plaintiff's actions constituted a felony. At that point, Reinhart presented Abel with the options of either proceeding with the disciplinary process or voluntarily resigning. If Plaintiff voluntarily resigned, Reinhart would not pursue the matter. The only document that would be placed in Plaintiff's file would be the letter of voluntary resignation signed that day. Reinhart also imposed two conditions. Abel was neither to file an appeal with the SPBR nor contact the media. Plaintiff was given five minutes to consider his options, during which time he signed the letter of resignation.

Subsequently, however, Abel filed an appeal with the SPBR alleging that his resignation was not voluntary, made under duress, and that he was given only five minutes to decide. Plaintiff also contacted the *Wapokneta Daily News*, which published an article on the matter on October

22, 2001. On October 23, 2001, Reinhart forwarded a letter to the Auglaize County Sheriff requesting an investigation into Plaintiff's "double-dipping," and held a meeting with Highway Department employees to explain his side of the story. The SPBR ruled against Plaintiff on his appeal. Plaintiff then filed the instant action against the Defendant for deprivation of his federal constitutional rights under the First, Fifth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. He also asserts several claims pursuant to Ohio law for wrongful discharge in violation of public policy, wrongful discharge for participation in workers' compensation proceedings, intentional infliction of emotional distress, breach of implied contract, fraudulent misrepresentation and defamation. Defendants' move for summary judgment on all claims.

### DISCUSSION

*A. Summary Judgment Standard*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323–25, 106 S.Ct. 2548. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (*quoting* FED.R.CIV.P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir.2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F.Supp.2d 1069, 1071 (E.D.Mich.2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987)). However, " 'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,' " *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir.1994) (quoting *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505); therefore, "[t]he Court is not required or permitted ... to judge the evidence or make findings of fact." *Williams*, 154 F.Supp.2d at 1071.

The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F.Supp.2d 928, 930 (S.D.Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir.2000).

### B. PLAINTIFF'S FEDERAL CLAIMS

Under Count I, Abel seeks redress for alleged constitutional violations of the First, Fifth and Fourteenth amendments of the United States Constitution, pursuant to 42 U.S.C. § 1983, which provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.

Plaintiff claims that his termination constituted age discrimination in violation of the Equal Protection clause, and was carried out in a manner that deprived him of his Due Process rights. Abel also contends that Reinhart retaliated against him in derogation of his First Amendment rights by initiating the investigation into Plaintiff's "double-dipping," for which Abel maintains he was discharged. Plaintiff also asserts that Reinhart's subsequent actions after Plaintiff appealed to the SPBR, and contacted the media were also retaliatory.

■ To establish a claim against a public official under 42 U.S.C. § 1983, Abel must prove that the conduct complained of was: (1) committed by a person acting under the color of state law; and (2) deprived him of a federally protected constitutional or statutory right. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir.2001); *Weberg v. Franks*, 229 F.3d 514, 522 (6th Cir.2000).

There is no dispute that Defendants were acting under the color of state law. The only issue before the Court is whether Abel was deprived of his federal rights. Defendants move for summary judgment asserting that there been no such deprivation.

■ Reinhart also asserts that he is entitled to qualified immunity in his individual capacity. Qualified immunity is an affirmative defense that shields public officials performing discretionary functions from civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Like absolute immunity, qualified immunity "is an *immunity from suit* rather than a mere defense to liability . . . [and] is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) (emphasis in original).

■ In analyzing qualified immunity claims, a court must determine (1) whether the plaintiff has asserted a violation of a known civil constitutional right, and (2) whether the constitutional right was so clearly established at the time in question

that a reasonable official in the defendant's position would have known he was violating plaintiff's constitutional rights. *Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Hutsell v. Sayre,* 5 F.3d 996, 1003 (6th Cir.1993). In determining whether a violation of a constitutional right has been established, the Court views the evidence "in [a] light most favorable to the party asserting the injury." *Crockett v. Cumberland Coll.,* 316 F.3d 571, 579 (6th Cir.2003).

■ Once a qualified immunity defense is raised, the "plaintiff is obliged to present facts which if true would constitute a violation of clearly established law." *Dominque v. Telb,* 831 F.2d 673, 677 (6th Cir.1987) (citing *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985)). While the ultimate burden of proof is upon the plaintiff to show that the defendant is not entitled to qualified immunity, the defendant "bear[s] the initial burden of coming forward with facts to suggest that they were acting within the scope of their discretionary authority during the incident in question." *Rich v. City of Mayfield Heights,* 955 F.2d 1092 (6th Cir.1992). Qualified immunity provides a broad range of protection, as it protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir.1992).

## 1. Age Discrimination

Since Plaintiff claims age discrimination in violation of 42 U.S. § 1983, he can make the required showing of discriminatory intent and purpose by following the methods of proof in Age Discrimination in Employment Act cases. *See Reeves v. Sanderson Plumbing Prods. Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Weberg,* 229 F.3d at 523; *Buntin v. Breathitt County Bd. of Educ.,* 134 F.3d 796, 800 (6th Cir.1998). To prevail in an employment discrimination claim brought pursuant to Age Discrimination in Employment Act, a plaintiff must either provide direct evidence of discrimination, or establish a *prima facie* case pursuant to the burden shifting paradigm set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Policastro v. Northwest Airlines, Inc.,* 297 F.3d 535, 538 (6th Cir.2002); *Sullivan v. River Valley Sch. Dist.,* 197 F.3d 804, 810 (6th Cir.1999); *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992).

If a plaintiff succeeds in making out a *prima facie* case of discrimination, then the defendant must produce a legitimate, nondiscriminatory reason for its action. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). "The defendant need not persuade the court that it was actually motivated by the proffered reasons. (citation omitted). It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Texas Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the defendant meets this burden of production, then the plaintiff "must persuade the court that the proffered reason for the employment action is pretext." *Leigh v. Bureau of State Lottery,* No. 88–1802, 1989 WL 62509, *5, 1989 U.S.App. LEXIS 8525, at *15 (6th Cir. June 13, 1989). Once the burden has shifted, the plaintiff is given "a full and fair opportunity to demonstrate pretext." *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089; *see also St. Mary's,* 509 U.S. at 507–08, 113 S.Ct. 2742. A plaintiff may demonstrate that the defendant's proffered explanation is pretext "either directly by persuading the court that a discriminatory reason

more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089.

Three ways in which a plaintiff can establish that defendant's reasons are not credible are: (1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the employment decision, or (3) if they were factors, by showing that they were jointly insufficient to motivate the employment decision. *Burns v. City of Columbus, Dep't of Pub. Safety, Div. of Police*, 91 F.3d 836, 844 (6th Cir.1996); *Maddox v. Univ. of Tenn.*, 62 F.3d 843, 848 (6th Cir.1995); *Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 266 (6th Cir.1986).[2] A court "may not, however, focus on the soundness of an employer's business judgment." *Chappell*, 803 F.2d at 266. Abel presents no direct evidence to support his claim. Accordingly, the analysis of this claim proceeds under the *McDonnell Douglas* burden-shifting paradigm.

 To establish a *prima facie* case for age discrimination, Plaintiff must demonstrate: 1) he was a member of a protected group; 2) he was subject to an adverse employment action; 3) he was qualified for the position; and 4) he was replaced by a younger person. *Skalka v. Fernald Envt'l Restoration Mgmt. Corp.*, 178 F.3d 414, 420 (6th Cir.1999). *See also Marano v. Aircraft Braking Sys.*, 138 F.Supp.2d 940, 949 (N.D.Ohio 2001). The replacement

must be substantially younger. *Marano*, 138 F.Supp.2d at 950 (citing *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). Since Plaintiff was in his midfifties at the time of his resignation he satisfies the first element.

 To satisfy the second element, Abel "may establish an adverse employment action by demonstrating that [he] was constructively discharged." *Logan v. Denny's Inc.*, 259 F.3d 558, 568 (6th Cir. 2001) (citing *Kocsis v. Multi–Care Mgmt.*, 97 F.3d 876, 886–87 (6th Cir.1996)). The *Logan* court instructed:

> To demonstrate a constructive discharge, [the plaintiff] must adduce evidence to show that 1) "the employer ... deliberately create[d] intolerable working conditions, as perceived by a reasonable person," and 2) the employer did so "with the intention of forcing the employee to quit...." *Moore v. KUKA Welding Sys.*, 171 F.3d 1073, 1080 (6th Cir.1999). "To determine if there is a constructive discharge, both the employer's intent and the employee's objective feelings must be examined." *Id.* (citing *Held v. Gulf Oil Co.*, 684 F.2d 427, 432 (6th Cir.1982)).

*Id.* at 568–69.

 Moreover, "[w]hen an employee alleges that he was forced to resign, the employee's perception must be viewed objectively without consideration of his undue sensitivities." *Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 515 (6th

---

**2.** The first method demonstrates that a defendant's reason is factually untrue. Under the second approach, a plaintiff shows "that the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or cover up." Finally, the third method shows that other employees, especially those not in the protected class, were not terminated for the same alleged behavior. *Manzer v.*

*Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir.1994). Plaintiffs using the second means of proving pretext "must introduce additional evidence of discrimination because the reasons offered by the defendant are not directly challenged and therefore do not bring about an inference of discrimination." *Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 346 (6th Cir.1997).

Cir.1991) (quoting *Henry v. Lennox Indus. Inc.,* 768 F.2d 746, 752 n. 3 (6th Cir.1985)). An "employee has 'an obligation not to assume the worst, and not to jump to conclusions too fast.' " *Id.* (quoting *Garner v. Wal–Mart Stores, Inc.,* 807 F.2d 1536, 1539 (11th Cir.1987)).

In *Logan,* the court expressly adopted the use of a set of non-exclusive factors as set forth by the Fifth Circuit to determine if a plaintiff has satisfied the first prong of the constructive discharge test, which states:

> Whether a reasonable person would have feel [sic] compelled to resign depends on the facts of each case, but we consider the following factors relevant, singly or in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Logan,* 259 F.3d at 569 (quoting *Brown v. Bunge Corp.,* 207 F.3d 776, 782 (5th Cir. 2000)).

Abel argues that Reinhart conducted the hearing in a manner designed to encourage Plaintiff to resign through manipulation and surprise. He asserts that he was given no opportunity to prepare for the hearing due to a lack of specific charges in the notification letter. (Doc. No. 23, Abel Dep., p. 35). Abel also maintains, and Defendants do not dispute, that he requested to be represented by a member of the Mens Committee, which was denied. *Id.* at 37. Plaintiff maintains that he was only given five minutes to choose between two undesirable options, resign or face disciplinary action that might include criminal prosecution and incarceration.

*See Scott v. Goodyear Tire & Rubber Co.,* 160 F.3d 1121, 1128 (6th Cir.1998) (applying the concept of constructive discharge where an employee was presented with two options neither of which included continued employment).

Plaintiff, however, received the hand-delivered letter notifying him of the hearing on October 1, 2001, on September 27, 2001. (Doc. No. 23, Abel Dep., pp. 33–34). Abel also acknowledges that the letter indicated that the hearing was regarding his future employment with the Highway Department, and recommended that he bring his copy of the Manual as well as legal representation, and he brought neither. *Id.* at 34–36. Plaintiff also admits that neither member of the Mens Committee who might have attended the hearing would have been any assistance. *Id.* at 40. Abel testified that he had some opportunity to review the documents Reinhart presented. *Id.* at 41. While he maintains that he would have desired to review his time cards and memo book to determine when he took vacation, he neither requested to review his time cards at the hearing nor sought additional time to gather his memo book. *Id.*

The Court acknowledges that as part of his deposition, Plaintiff testified:

Q. Did you respond to it?

A. No, I didn't. He told me that—he said, "And I talked to the prosecutor, and that's a felony. Its over $ 500." And it was $ 604 and something.

Q. And how did you respond to Mr. Reinhart when he informed you that he had already spoken to the prosecuting attorney?

A. Well, he kept on saying, "It's a felony," he said, "and I will prosecute you. You will go to jail." He said, "I will call the unemployment office"—or "Bureau of Workers' Com-

pensation. They will have no mercy on you. You will lose you PERS retirement." And he went on like that. He said, " Your second option"—

*Id.* at 42.

Plaintiff further testified:

Q. And how did you respond to those comments made by Mr. Reinhart?

A. I said, "Well, what are you doing? You are just blackmailing me out of here, aren't you?" He said, "No. I am giving you a chance to stay out of jail."

Q. Okay. Did Mr. Reinhart give you the opportunity to resign rather than face discipline, Mr. Abel?

A. Well, the way I looked at it, is he gave me a chance to resign other than going to jail. And I just wanted to get out—I knew—and he said that he would call the sheriff and have me removed.

Q. And was Mr. Kuck present when he said that?

A. Yes, he was.

Q. Okay. Were you given the opportunity to resign rather than face discipline, Mr. Abel, by Mr. Reinhart at this meeting?

A. Well, I don't know if you call it discipline or not. I mean, if you want to call going to jail, I guess, as discipline, then yes.

*Id.* at 43–44.

Viewed from an objective perspective without undue sensitivities, however, Plaintiff's perception was unreasonable. Reinhart had no authority to decide if, and how, Abel was to be prosecuted. As the County's Chief Engineer, Reinhart's ability to penalize Plaintiff was limited to removing Abel. Likewise, Reinhart's prediction that the BWC would have no mercy, along with other protestations Plaintiff al-

leges, should be viewed with similar skepticism.

Moreover, Sections 9(B) and (E) of the Manual state in pertinent part:.

9(B). Employee's on Workers' Compensation leave shall be placed on "inactive" payroll and shall not accrue vacation or sick leave and shall not be paid for holidays. *No employee shall receive both Workers' Compensation and Sick or Vacation pay.*

9(E). Employees who have used accrued Sick Leave in conjunction with a Workers' Compensation approved action may "buy back" the amount of accrued sick leave used by relinquishing the applicable portion of their Workers' Compensation payment in lieu of Sick Leave.

(Doc. No. 23, Abel Dep., Ex. 1, p. 35).

Reinhart also explained to Abel that "double-dipping" constituted a Class III violation for theft of County property, punishable by removal. *Id.* at 42. Significantly, Defendants also direct the Court to *Kinney v. Ohio State Dep't of Admin. Serv.*, 14 Ohio App.3d 33, 469 N.E.2d 1007 (1984). In *Kinney*, the court stated:

[A] resignation is involuntary and therefore ineffective when it is the product of the appointing authority's wrongful coercion. Thus, where an employer induces a resignation as the only alternative to removal based upon unfounded charges of misconduct, the resignation should be regarded as ineffective to deny the employee of his appeal. Under those circumstances, there has not been a resignation but, rather, a removal, the merits of which the employee should be permitted to contest. This differs from a situation where an employee is permitted to resign as an alternative to being removed on charges which are meritori-

ous; in such an event, as there is no coercion, the resignation is voluntary. *Id.* at 1010.

Abel did not deny receiving double payments when testifying before the SPBR as part of his appeal regarding his alleged forced resignation. (Doc. No. 23, Abel Dep., p. 50).[3] Further, he acknowledges that the SPBR ruled against him, and dismissed the appeal. *Id.* Accordingly, Plaintiff has failed to prove that he was constructively discharged, and cannot make out a *prima facie* case of age discrimination.[4]

 Even assuming *arguendo* that Plaintiff could establish a *prima facie* case, Defendants have offered Abel's "double-dipping," as a legitimate non-discriminatory basis for their action. In response, Abel merely offers a conclusory statement that Defendants' reasons for confronting him about "double-dipping" and forcing him to resign were pretextual.[5]

### 2. Due Process

 Plaintiff also asserts that he was deprived of his Due Process rights as a result of inadequate notice of the specific charges against him prior to the hearing,

along with many of the same reasons he contends resulted in his constructive discharge. To maintain this claim, Abel must have a protected property interest in continued employment. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d (1985) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 576–78, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). "A property interest in employment can, of course, be created by ordinance, or by an implied contract. In either case, however, the sufficiency of the claim of entitlement must be decided by reference to state law." *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). *See also Loudermill*, 470 U.S. at 538, 105 S.Ct. 1487. Defendants do not dispute that Plaintiff was a classified civil servant who may be terminated only for cause, and remains employed during "good behavior and efficient service, had a property in continued employment pursuant to state statute." OHIO REV.CODE. ANN. § 124.34 (2001). *See also Christophel v. Kukulinsky*, 61 F.3d 479, 482 (6th Cir.1995).

 In *Loudermill*, the United States Supreme Court held that to satisfy due process a public employee who has a

---

3. Plaintiff also maintains that one may receive simultaneous payments for workers' compensation and vacation time. (Doc. No. 29, Reinhart Dep., Ex. 6). Abel has provided a supplemental affidavit, including his sick and vacation leave record from Auglaize County, which he asserts demonstrates that he did not use sick leave after July 1998. (Doc. No. 34, Ex. E). The Court notes that this document covers calendar year 1997 and 1998, and two of the three periods Plaintiff is alleged to have "double-dipped" were, as Abel sets forth in his brief, in 1999, one of which Abel acknowledges he received sick leave. (Doc. No. 32, p. 2). Moreover, the County policy which he violated, covers both sick and vacation leave.

4. The parties dispute whether Plaintiff was qualified and/or replaced by a significantly younger person.

5. As to Defendants' assertion that they are entitled to the benefit of the "same actor" presumption, under which a court infers lack of discrimination if the same party hires/promotes and fires/demotes an individual, the Sixth Circuit recently clarified that "where . . . the factfinder decides to draw the same-actor inference, it is insufficient to warrant summary judgment for the defendant if the employee has otherwise raised a genuine issue of material fact." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 573–74 (6th Cir.2003). Given the lack of constructive discharge, nor any substantive attempt by Plaintiff to demonstrate pretext, the Court need not resolve this issue in the case *sub judice.*

protected property interest must not only receive a post-termination review but also must be afforded notice and a pre-termination hearing prior to discharge. *Loudermill*, 470 U.S. at 542, 105 S.Ct. 1487. Oral or written notice is sufficient. *Id.* at 546, 105 S.Ct. 1487. Abel's voluntarily resignation, however, renders *Loudermill* inapplicable. *See Buckner v. City of Highland Park*, 901 F.2d 491, 495 (6th Cir.1990) (asserting that the essence of *Loudermill* requires that a public employee be given a chance to respond and present their position).

Even assuming *arguendo* that Plaintiff was in fact discharged, he fails to demonstrate a deprivation of due process. Abel was given advance notice of the hearing and was informed that it would address his future employment. The notice recommended that he bring his copy of the Manual and legal representation. Reinhart orally informed Plaintiff of the specific charge and presented him with the BWC and County records to review. Abel also did not seek an extension to retrieve his own records. Moreover, Plaintiff subsequently appealed to the SPBR, which ultimately ruled against him.

▮▮▮ The Court is also unconvinced by Plaintiff's argument that he was denied Due Process because he was only apprized of the specific charges at the hearing, not in Reinhart's September 27, 2001 letter. There is no constitutional right to know the specific charges prior to a pre-disciplinary hearing. *DeMarco v. Cuyahoga County Dep't of Human Servs.*, 12 F.Supp.2d 715, 719 (N.D.Ohio 1998). *See also McDaniel v. Princeton City Sch. Dist.*, 72 F.Supp.2d 874, 880–81 (S.D.Ohio 1999), *aff'd*, 45 Fed.Appx. 354 (6th Cir. 2002) (finding insufficient notice where the reasons for Plaintiff's recommended termination were not contained in either the letter notifying her of the pre-disciplinary hearing, or discussed at the hearing itself).

### 3. Retaliation in Violation of First Amendment

▮▮▮ To set forth a *prima facie* case of retaliation for the exercise of his First Amendment right to free speech as a public employee, Plaintiff must demonstrate: "(1) that [he] was engaged in a constitutionally protected activity; (2) that the defendants' adverse action caused [him] to suffer an˙ injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of [his] constitutional rights." *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 965 (6th Cir.2002) (citing *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 715 (6th Cir.2001)). However, even "[i]f retaliation for protected speech was a substantial or motivating factor in Defendants' disciplinary or adverse action ... Defendants may present evidence that they would have taken [the] action in the absence of [his] protected speech." *Banks v. Wolfe County Bd. of Educ.*, 330 F.3d 888, 893 (6th Cir.2003) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). Plaintiff's voluntary resignation as a result of Reinhart's investigation into Abel's "double-dipping" cannot serve as an adverse action in response to Plaintiff's resort to the newspaper and filing an SPBR appeal over his removal from the snow plow route.

▮▮▮ The Court is also unpersuaded by Plaintiff's characterization of Reinhart's October 23, 2001, letter to the Auglaize County Sheriff seeking a full investigation of Abel's alleged "double-dipping" as an adverse action. (Doc. No. 29, Ex. 8). Granted, it was sent after Abel's October 9, 2001, letter to the SPBR appealing his "forced resignation" (Doc. No. 29, Ex. 6), and a day after an article in the *Wapa-*

*koneta Daily News* alleging that Plaintiff was forced to resign. (Doc. No. 29, Ex. 7). Not only has Plaintiff failed to show that he was constructively discharged, as set forth below in the Court's disposition of Plaintiff's state law claims, Abel also fails to demonstrate any concrete emotional distress and/or humiliation he did not first inflict upon himself. *See Mattox v. City of Forest Park,* 183 F.3d 515, 523 (6th Cir. 1999) (recognizing that in some circumstances injuries based on "embarrassment, humiliation, and emotional distress" may be sufficient to sustain a § 1983 claim).

Since Plaintiff cannot establish a violation of any known constitutional right, Defendant Reinhart is entitled to summary judgment based on qualified immunity on all of Plaintiff's federal claims in his individual capacity. The Court need not consider whether Plaintiff's constitutional rights were so clearly established at the time in question that a reasonable official in the Reinhart's position would have known he was violating plaintiff's constitutional rights. Likewise, Reinhart, in his official capacity, and the County are also entitled to summary judgment on Plaintiff's federal claims asserted pursuant to *Monnell v. Dep't of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *See Doe v. Claiborne County, Tenn.,* 103 F.3d 495, 505–06 (6th Cir.1996) (explaining that such liability requires a showing that there has been a deprivation of a constitutional right and the governmental entity is responsible for it).

### C. PLAINTIFF'S STATE LAW CLAIMS

#### 1. Exercise of Supplemental Jurisdiction

██ The Court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Indeed, 'if all federal claims

are dismissed before trial', ... the state claims [generally] should be dismissed." *Saglioccolo v. Eagle Ins. Co.,* 112 F.3d 226, 233 (6th Cir.1997) (citations omitted). Dismissal is without prejudice. *Whittington v. Milby, 928 F.2d 188, 194* (6th Cir.1991); *Collard v. Kentucky Board of Nursing,* 896 F.2d 179, 184 (6th Cir.1990).

On the other hand, a district court does have discretion to exercise supplemental jurisdiction in the interests of judicial economy and to avoid unneeded litigation. *Taylor v. First of Am. Bank–Wayne,* 973 F.2d 1284, 1287–88 (6th Cir.1992); *Aschinger v. Columbus Showcase Co.,* 934 F.2d 1402, 1412–13 (6th Cir.1991). In *Taylor,* the court held that the district court did not abuse its discretion in retaining jurisdiction where the case had been on the docket for two years, discovery had been completed and the issues for summary judgment had been fully briefed. *Taylor,* 973 F.2d at 1288. Likewise, in *Aschinger,* the court found no abuse of discretion in deciding to maintain jurisdiction over the plaintiff's remaining state law claims where similar factual determinations were a predicate for deciding both the federal and state claims, discovery was closed and a significant amount of resources had been spent. *Aschinger,* 934 F.2d at 1413. The Court finds that the case *sub judice* presents similar circumstances, and in its discretion shall exercise jurisdiction to decide Plaintiff's state law claims.

#### 2. Count II & IV–Wrongful Discharge in Violation of Ohio Public Policy

██ Plaintiff claims that he was wrongfully discharged in violation of Ohio public policy based on age, longevity in employment, fairness, implementation of grievance procedures and economic productivity of employees. The Ohio Supreme Court has recognized a claim for

wrongful discharge in violation of a public policy. *See Painter v. Graley,* 70 Ohio St.3d 377, 639 N.E.2d 51 (1994); *Greeley v. Miami Valley Maint. Contractors, Inc.,* 49 Ohio St.3d 228, 551 N.E.2d 981 (1990). While Defendants and Plaintiff argue the merits of Abel's claims, in *Haynes v. Zoological Soc'y of Cincinnati,* 73 Ohio St.3d 254, 652 N.E.2d 948, 951 (1995) the Ohio Supreme Court stated:

> *Greeley* provides an exception to the employment-at-will doctrine. Thus, as stated above, in order for an employee to bring a cause of action pursuant to *Greeley, supra,* that employee must have been an employee at will.

*See also Owens v. Univ. of Toledo,* No. 00AP–1164, 2001 WL 491750, **3–4, 2001 Ohio App. LEXIS 2070 at *10–11 (Ohio Ct.App. 10th Dist. May 10, 2001); *Applegate v. Weadock,* No. 2–95–24, 1995 WL 705214, **1–3, 1995 Ohio App. LEXIS 5544, at *5–8 (Ohio Ct.App. Nov. 30, 1995).

The *Applegate* court also stated:

> Undoubtedly, the tort of wrongful discharge in the employment-at-will context exists in Ohio. *Greeley.* However, . . ., public employees serve by statute, and the statutes pertaining to public employees govern when and for what reasons a public employee can be terminated. E.g., R.C. 124.34. Moreover, a public employee's recourse when he alleges that he has been "wrongfully discharged" is through the procedures set forth in Chapter 124 of the Revised Code.
>
> . . . . .
>
> Appellant had recourse through the procedures established by Chapter 124 of the Revised Code for his "wrongful discharge" by the appointing authority.

*Applegate,* No. 2–95–24, 1995 WL 705214, **1–3, 1995 Ohio App. LEXIS 5544, at *5–7

As a classified civil servant Plaintiff has a property right in continued employment pursuant to O.R.C. § 124.34. Plaintiff cannot simultaneously claim to have a property interest in continued in employment and be an at-will employee. Thus, Defendants are entitled to summary judgment on Abel's claims that he was wrongfully discharged in violation of public policy.

3. Count III–Retaliatory Discharge for Participation in Workers' Compensation Proceedings

Abel claims that he was investigated and discharged in contravention to O.R.C. § 4123.90 for having participated in workers' compensation proceedings and receiving benefits thereto. O.R.C. § 4123.90 provides in pertinent part:

> No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the worker's compensation act . . .

Under O.R.C. § 4123.90, "the burden of proof is upon the employee to specifically show that the termination was in direct response to the filing of a claim." *Markham v. Earle M. Jorgensen Co., aka, EMJ,* 138 Ohio App.3d 484, 741 N.E.2d 618, 625 (2000). *See also White v. Mount Carmel Med. Ctr.,* 150 Ohio App.3d 316, 780 N.E.2d 1054, 1063 (2002). To establish a *prima facie* case for retaliatory discharge under this claim, an employee must show "that he: (1) was injured on the job; (2) filed a workers' compensation claim; and, (3) was discharged in contravention of R.C. 4123.90." *Markham,* 741 N.E.2d at 624. If the employee sets forth a *prima facie* case, the employer must present a legitimate non-discriminatory reason for its action. *Id.* The employee must then demonstrate that the legitimate non-discriminatory reason was pretextual. *Id.* Plaintiff argues that he has satisfied his burden because Reinhart began his investigation

after Abel had been receiving workers' compensation benefits.

■ Since he voluntarily resigned, Plaintiff is unable to establish a *prima facie* case that he was discharged in violation of O.R.C. § 4123.90. In addition, Defendants have set forth Plaintiff's "double-dipping" as a legitimate non-discriminatory reason for his alleged termination. Plaintiff also has failed to articulate any reason that his alleged discharge was pretextual. Thus, Defendants are entitled to summary judgment on Abel's claim that he was forced to resign in retaliation for participating in and receiving workers' compensation benefits.

#### 4. Count V–Intentional Infliction of Emotional Distress

■ Abel claims that Defendants orchestrated events, including his removal from the snow plow route culminating in his forced resignation, constituting a scheme that is actionable for the intentional infliction of emotional distress. To establish a claim for the intentional infliction of emotional distress requires Plaintiff to prove "(1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress." *Phung v. Waste Mgmt., Inc.,* 71 Ohio St.3d 408, 644 N.E.2d 286, 289 (1994). *See also Maxwell v. GTE Wireless Serv. Corp.,* 121 F.Supp.2d 649, 660 (N.D.Ohio 2000); *Miller v. Premier Indus. Corp.,* 136 Ohio App.3d 662, 737 N.E.2d 594, 603 (2001). To be extreme and outrageous, Reinhart's conduct must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.,* 6 Ohio St.3d 369, 453

N.E.2d 666, 671 (1983). *See also Hillman v. Safeco Ins. Co. of Am.,* 190 F.Supp.2d 1029, 1039 (N.D.Ohio 2002).

■ Abel voluntarily resigned from the Highway Department. Even if Plaintiff were discharged, the combination of this action with his removal from the snow plow route cannot be described as beyond all bounds of decency in a civilized society. Moreover, Plaintiff admits that he has never sought medical or psychiatric treatment to address his purported severe emotional distress, anxiety, humiliation or embarrassment (Doc. No. 23, Abel Dep., pp. 62–64), which is also fatal to this claim. *See Gagne v. Northwestern Nat. Ins. Co.,* 881 F.2d 309, 318 (6th Cir.1989); *Cameron v. Bd. of Educ.,* 795 F.Supp. 228, 238 (S.D.Ohio 1991); *Dickerson v. Int'l UAW Union,* 98 Ohio App.3d 171, 648 N.E.2d 40, 50 (1994). Thus, Defendants are entitled to summary judgment on Plaintiff's claim for the intentional infliction of emotional distress.

#### 4. Claim VI–Breach of Implied Contract

■ Plaintiff argues that the combination of his having signed a statement of receipt and the Manual's detailed specific language regarding disciplinary procedures created an implicit contractual relationship, which Defendants breached by forcing him to resign by mis-classifying his "double dipping" as a Class III violation, rather than a Class I violation, which would have resulted in a verbal reprimand with a notation in his file as a first offense. (Doc. No. 23, Abel Dep. Ex. 2, p. 23). In support of his position, Plaintiff directs the court to *Golem v. Village of Put–In–Bay,* 222 F.Supp.2d 924, 930 (N.D.Ohio 2002). In *Golem,* the court explained that a contractual relationship had arisen where an employee had signed a written acknowledgment of having received a handbook

demonstrating his intent to be bound by its terms. A critical aspect that Abel has overlooked is that the employee handbook in that case contained no disclaimer, which the *Golem* court held manifested the employer's intent to also be bound. *Id.* In fact, in *Rigby v. Falls Equip. Co., Inc.,* 150 Ohio App.3d 155, 779 N.E.2d 1056, 1060, 1061 (2002), the court stated:

> Generally, employee handbooks do not constitute an employment contract. *Ridgill v. Little Forest Med. Center* (June 28, 2000), 9th Dist. Nos. 19501 and 19530, 2000 WL 840494, 2000 Ohio App. LEXIS 2825; see, also, *Finsterwald–Maiden v. AAA S. Cent. Ohio* (1996), 115 Ohio App.3d 442, 446, 685 N.E.2d 786. An employee handbook may be considered with regard to questions of whether an implied contract exists, but its presence alone is not dispositive. See, *Ridgill, supra.* Even though the employee handbook may be considered, " 'absent fraud in the inducement, a disclaimer in an employee handbook stating that employment is at will precludes an employment contract other than at will based upon the terms of the employee handbook.' " *Westenberger v. St. Thomas Med. Ctr.* (June 29, 1994), 9th Dist. No. 16119, 1994 WL 286022, 1994 Ohio App. LEXIS 2955, quoting *Wing v. Anchor Media Ltd. of Tx.* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph one of the syllabus.

Section 3 of the Manual in the case *sub judice* provides:

> The policies and procedures established and set forth in this manual provide guidelines for the County Engineer, Supervisors, and employees during the course of their employment with the Auglaize County Engineer's Department. However, nothing herein is intended to, nor shall it be construed or interpreted, so as to create contractual or vested rights for employees regarding employment benefits, policies, procedures or any other provisions of this manual. Nothing herein shall be construed as creating an obligation on the party of the County Engineer to employ the employee for a particular length of time.

(Doc. No. 23, Abel Dep., Ex. 2, p. 3).

Initially, the Court observes that Plaintiff's voluntarily resignation moots any distinction between a Class I and III violation. Further, the language of the disclaimer, which is clear and unambiguous, precludes a finding that the terms of the Manual create something other than an at-will relationship. Its presence obviates any manifestation of Defendants' intent to be contractually bound and represents nothing more than a unilateral statement of the Auglaize County Engineer's rules and regulations. *Golem,* 222 F.Supp.2d at 929. Thus, Defendants are entitled to summary judgment on Plaintiff's claim for breach of implied contract.[6]

### 5. Count VII–Fraudulent Misrepresentation

▮▮▮▮ Plaintiff asserts a claim for fraudulent misrepresentation, arguing that he justifiably relied on the accuracy of Reinhart's blanket statement that Abel's "double-dipping" was felonious conduct in deciding to resign. To establish a claim for fraudulent misrepresentation, a plaintiff must prove: "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable

---

**6.** While Plaintiff's complaint also alleged liability under promissory estoppel (Doc. No. 1, ¶ 24), he has proffered no evidence to this effect.

reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Russ v. TRW, Inc.*, 59 Ohio St.3d 42, 570 N.E.2d 1076, 1083 (1991). *See also Burr v. Bd. of County Commrs. of Stark Cty.*, 23 Ohio St.3d 69, 491 N.E.2d 1101, 1105 (1986).

It is clear that Reinhart represented to Plaintiff that he had committed felonious conduct. (Doc. No. 23, Abel Dep., p. 42; Doc. No. 29, Reinhart Dep. pp. 23–24). It is also obvious that Abel relied on this representation in submitting his resignation. Prior to making this representation, however, Reinhart spoke with the County prosecutor, and directed Plaintiff to the Manual at the hearing. Abel's contention that Reinhart's statement was made falsely, or with utter disregard and recklessness as to its truth is baseless.

 Moreover, "[t]he general rule is that fraud cannot be predicated upon a representation concerning a future event." *Link v. Leadworks Corp.*, 79 Ohio App.3d 735, 607 N.E.2d 1140, 1145 (1992). *See also Yo–Can, Inc. v. The Yogurt Exch., Inc.*, 149 Ohio App.3d 513, 778 N.E.2d 80, 89 (2002) (explaining that a mere prediction about the future does not constitute a fraudulent misrepresentation unless there is a present intent not to perform). As discussed above, Reinhart had no authority to decide if, and how, Abel was to be prosecuted. As the County's Chief Engineer, Reinhart's ability to penalize Plaintiff was limited to removing him from his position. Thus, Defendants are entitled to summary judgment on Plaintiff's claim for fraudulent misrepresentation.

### 6. Claim VIII–Defamation

 Abel maintains that he was defamed by Reinhart's publication of his October 23, 2001, letter asking the Auglaize County Sheriff to conduct an inquiry into Abel's "double-dipping." Plaintiff also contends that he was defamed when Reinhart met with his former fellow employees to explain the situation, and alleged that Plaintiff was guilty of theft, the day following the publication of the article in the *Wapakoneta Daily News*. (Doc. No. 29, Reinhart Dep., pp. 49–50; *Id.* at Ex. 5). Abel contends that the meeting was also done out of spite due to his appeal to the SPBR.

> Under Ohio law, libel [written defamation], is defined as "a false malicious publication made with the intent to injure a person's reputation or to expose him to public hatred, contempt ridicule, shame or disgrace, or affect him adversely in his trade or profession." (citation omitted). The elements of a libel action are falsity, defamation, publication, injury and fault. (citation omitted).

*Krems v. Univ. Hosp. of Cleveland*, 133 Ohio App.3d 6, 726 N.E.2d 1016, 1019 (1999).[7]

 "[T]ruth is an absolute defense to a defamation action." *Id.* at 1020. *See also Nat'l Medic Servs. Corp. v. E.W. Scripps Co.*, 61 Ohio App.3d 752, 573 N.E.2d 1148, 1150 (1989) (explaining that falsity is an essential element of a libel action, and that no action will lie "when the record reveals that the published reports were fairly accurate or substantially true").

**7.** The Court again notes that "[t]o state a claim under Ohio law for defamation, the plaintiff must show that there was: 1) a false statement, 2) defamatory to the plaintiff, 3) published to a third party, 4) by a defendant who was at least negligent, and 5) damaging to the plaintiff's reputation." *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 312 (6th Cir.2000) (citing *Lansdowne v. Beacon Journal Publ'g Co.*, 32 Ohio St.3d 176, 512 N.E.2d 979, 984 (1987)).

Plaintiff does not deny having simultaneously received workers' compensation benefits and vacation and/or sick pay. Abel initiated contact with the media, in contravention to the confidentiality agreement with Reinhart, and knew the matter would and did become public as a result. (Doc. No. 23, Abel Dep., pp. 48, 61–62). The article was published in the *Wapakoneta Daily News* on October 22, 2001, the day before the meeting. Abel acknowledges that this article was the first source to disclose the matter to the whole town. *Id.* at 61. He cannot demonstrate any injury, including the loss of friends and ability to be an organized person, that he did not first visit upon himself. Thus, Defendants are entitled to summary judgment on Plaintiff's claim for defamation.[8]

### CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment (Doc. No. 31) is granted. Defendant Reinhart is entitled to qualified immunity on Plaintiff's claims against him in his individual capacity brought pursuant to 42 U.S.C. § 1983.

IT IS SO ORDERED.

### JUDGMENT ENTRY

For the reasons stated in the Memorandum Opinion filed contemporaneously with this entry, IT IS HEREBY ORDERED, ADJUDGED and DECREED that Defendants' motion for summary judgment (Doc. No. 36) is granted.

---

8. The Court need not consider Defendants' argument that Reinhart's letter to the Au- glaize County Sheriff is insulated from liability based on qualified privilege.